# 16-3348

## United States Court of Appeals
## for the Second Circuit



MELODY BYNUM,

*Plaintiff-Appellant,*

v.

MAPLEBEAR INC., DBA INSTACART,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (Brooklyn)

## BRIEF FOR PLAINTIFF-APPELLANT



ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000

DICK BAILEY SERVICE (212) 608-7666 (718) 522-4363 (516) 222-2470 (914) 682-0848 Fax: (718) 522-4024
1-800-531-2028 - Email: appeals@dickbailey.com -Website: www.dickbailey.com

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... i

TABLE OF AUTHORITIES .............................................................................. iii

I. JURISDICTIONAL STATEMENT ............................................................... 1

II. ISSUES PRESENTED FOR REVIEW .......................................................... 2

III. STATEMENT OF CASE – RELEVANT FACTS ......................................... 3

IV. STATEMENT OF THE CASE – PROCEDURAL HISTORY .......................... 11

V. SUMMMARY OF ARGUMENT .................................................................. 13

VI. ARGUMENT ............................................................................................. 15

  1.   A DE NOVO STANDARD OF REVIEW APPLIES.......................................... 15

  2.   AS SET FORTH BY THE SUPREME COURT IN BARRENTINE, CONGRESS
INTENDED FLSA CLAIMS TO BE NONARBITRABLE ...................................... 18

    A.   THE SUPREME COURT IN BARRENTINE ASCERTAINED THE RELEVANT
INTENT OF CONGRESS BASED ON THE TEXT AND REMEDIAL PURPOSE OF
THE FLSA – WHICH DO NOT CHANGE FROM CASE TO CASE AND DO NOT
DEPEND ON UNION INVOLVEMENT .......................................................... 18

    B.   BY ALLOWING SUITS IN ANY STATE OR FEDERAL COURT, CONGRESS
INTENDED TO GIVE EMPLOYEES A CONVENIENT, AND INEXPENSIVE FORUM
– AN ARBITRAL FORUM IS INCONSISTENT WITH THIS INTENT OF
CONGRESS .............................................................................................. 20

    C.   THE JUDICIAL APPROVAL REQUIREMENT AND THE GATEKEEPER ROLE OF
JUDGES UNDER THE SECOND CIRCUIT'S DECISION IN CHEEKS FURTHER
CONFIRM THAT FLSA CLAIMS ARE NONARBITRABLE .......................................... 21

    D.   THE MADATORY ARBITRATION PROVISIONS ARE ESPECIALLY
INCONSISTENT AND IN CONFLICT WITH ANTI-RETALIATION AND ANTI-
DISCRIMINATION PROVISIONS OF THE FLSA AND NYLL........................................ 24

    E.   MANDATORY ARBITRATION OF FLSA CLAIMS HAS BECOME COUNTER-
PRODUCTIVE AND UNDERMINES THE PURPOSE OF THE FAA AND FLSA.......... 25

  3.   THE DISTRICT COURT'S ATTEMPTS TO DISTINGUISH BARRENTINE EASILY
FAIL....................................................................................................... 27

i

A.  THE FAA IS INAPPLICABLE IN THIS CASE, BUT THE HOLDING AND
REASONING IN BARRENTINE APPLIES WITH EQUAL OR GREATER FORCE
UNDER THE FAA ............................................................................................. 27

B.  THE HOLDING AND REASONING IN BARRENTINE APPLIES WITH EQUAL
OR GREATER FORCE OUTSIDE THE UNION CONTEXT WHERE WORKERS HAVE
LESS PROTECTIONS ......................................................................................... 28

(i)  ARBITRATION IN THE UNION AND NON-UNION CONTEXTS IS
CONTROLLED BY CONTRACT AND WAIVER OF RIGHTS – WHICH CONFLICT
WITH THE FLSA ............................................................................................. 29

(ii)   WORKERS OUTSIDE THE UNION CONTEXT HAVE LESS BARGAINING
POWER, AND GREATER LIKELIHOOD OF FLSA CLAIMS BEING LOST IN
ARBITRATION ............................................................................................... 30

4.   EVEN IF FLSA RIGHTS ARE ARBITRABLE - AFTER CHEEKS, FLSA RIGHTS
SUCH AS THE RIGHT TO A JUDICIAL FORUM, CANNOT BE PROSPECTIVELY
WAIVED, BECAUSE OF THE INHERENT INEQUALITY OF BARGAINING POWER
BETWEEN EMPLOYERS AND EMPLOYEES .................................................... 33

5.   IF THIS COURT FINDS THAT FLSA RIGHTS ARE ARBITRABLE, A WAIVER OF
FLSA RIGHTS SHOULD ONLY BE ENFORCEABLE WHERE: 1) THE WAIVER WAS
MADE POST-DISPUTE; 2) THE EMPLOYEE WAS REPRESENTED BY COUNSEL IN
CONNECTION WITH THE WAIVER; AND 3) THE WAIVER WAS EXPLICIT, CLEAR
AND UNMISTAKABLE ..................................................................................... 39

6.   THE DISTRICT COURT LACKED JURISDICTION TO COMPEL ARBITRATION
UNDER THE FAA – SECTION 1 OF THE FAA SPECIFICALLY EXCLUDES
DELIVERY/TRANSPORTATION WORKERS LIKE PLAINTIFF ....................... 40

7.   THE DISTRICT COURT'S RELIANCE ON CERTAIN CASES IS MISPLACED ....... 43

A.  CIAGO AND RELATED CASES ................................................................. 44

B.  SECOND CIRCUIT'S DECISION IN SUTHERLAND v. ERNST & YOUNG .......... 46

8.   THE PARTIES DID NOT AGREE TO ARBITRATE IN THE FIRST PLACE .............. 49

VI. CONCLUSION ................................................................................................. 51

# TABLE OF AUTHORITIES

## CASES

*Aimcee Wholesale Corp. v. Tomar Products, Inc.*,
  21 N.Y.2d 621, 626-27, 237 N.E.2d 223 (1968) ...................................................................29

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333, 341 (2011)..............................................................................................42

*Barfield v. New York City Health & Hospitals Corp.*,
  537 F.3d 132, 141 (2d Cir. 2008)..................................................................................5

*Barrentine v. Arkansas-Best Freight Sys. Inc.*,
  450 U.S. 728, 740 (1981).................................................................................. *passim*

*Booth v. Montgomery Ward & Co.*,
  44 F. Supp. 451, 452, 455-56 (D. Neb. 1942)...........................................................20

*Bouzzi v. F & J Pine Restaurant, LLC*,
  841 F.Supp.2d 635, 640 -641 (E.D.N.Y., 2012) .......................................................23

*Brady v. Williams Capital Grp., L.P.*,
  14 N.Y.3d 459, 465, 928 N.E.2d 383, 386 (2010)....................................................10

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054, 1059 (2d Cir. 1988).....................................................................5, 30

*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945)........................................................................................ *passim*

*Caserta v. Home Lines Agency,Inc.*,
  273 F.2d 943, 944, 946 (2d Cir.1959)......................................................30, 36, 48

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015)........................................................................... *passim*

*Ciago v. Ameriquest Mortg. Co.*,
  295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003).......................................................44, 45

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)..........................................................................11, 14, 16, 41

*Cobarruviaz v. Maplebear, Inc.*,
  143 F. Supp. 3d 930, 943 (N.D. Cal. 2015) .......................................................9, 26

*D.A. Schulte, Inc. v. Gangi*,
   328 U.S. 108, 66 (1946) ................................................................. *passim*

*Dees v. Hydradry, Inc.*,
   706 F.Supp.2d 1227 (M.D. Fla., 2010) ...........................................23

*Diaz v. Michigan Logistics Inc.*,
   -F.Supp.3d-, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016) ............41, 42

*DiRussa v. Dean Witter Reynolds Inc.*,
   121 F.3d 818, 824 (2d Cir. 1997) ....................................................30

*Fredman v. Foley Bros.*,
   50 F. Supp. 161, 162 (W.D. Mo. 1943) ...........................................21

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840, 850 (2d Cir. 1987) ..............................................19, 46

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20, 21 (U.S. 1991) ......................17, 20, 22, 33, 36, 44, 46

*Hall Street. Associates., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576, 579 (2008) ..........................................................10, 30

*In re Repetitive Stress Injury Litigation*,
   35 F.3d 637 (2d Cir. 1994) ...............................................................2

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163, 169 (2d Cir. 2004) ....................................................15

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir.) .......................................................................1

*Katz v. Cellco P'ship*,
   SDNY Case No. 12-9193, ECF No. 21 (VLB) ..................................1

*Lawrence v. Sol G. Atlas Realty Co.*,
   841 F.3d 81, 83 (2d Cir. 2016) ........................................................15

*Lewis v. Epic Sys. Corp.*,
   -F.3d -, 2016 WL 3029464 (7th Cir. May 26, 2016) ..................16, 17

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138, 143 (2d Cir. 2013) ......................................................2

iv

*Lynn's Food Stores, Inc. v. United States Dep't of Labor,*
   679 F.2d 1350, 1355 (11th Cir.1982) ....................................31

*Martin v. Spring Break '83 Prods., L.L.C.,*
   688 F.3d 247, 253–57 (5th Cir.2012), ....................................31

*Moreno v. Nassau Country Club,*
   2013 WL 5788730, 2 (E.D.N.Y., 2013)....................................23

*Morris v. Ernst & Young, LLP,*
   -F.3d-, 2016 WL 4433080 (9th Cir. Aug. 22, 2016)....................................17

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,*
   820 F.3d 527, 536 (2d Cir. 2016)....................................28

*Nicosia v. Amazon.com, Inc.,*
   834 F.3d 220, 229 (2d Cir. 2016)....................................15, 49

*Perry v. Thomas,*
   482 U.S. 483, 490 (1987)....................................42

*Reyes v. HIP at Murray Street, LLC, et al,*
   15-cv-00238, ECF No. 60 (LGS)....................................24

*Riley v. MEBA Pension Trust,*
   586 F.2d 968, 970 (2d Cir. 1978)....................................47

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
   559 U.S. 393, 398 (2010)....................................42

*Shearson/Am. Exp., Inc. v. McMahon,*
   482 U.S. 220 (1987)....................................45

*Socias v. Vornado Realty L.P* ....................................13

*Sutherland v. Ernst & Young LLP,*
   726 F.3d 290, 292 (2d Cir. 2013)....................................46, 47, 48, 49

*Tran v. Tran,*
   54 F.3d 115, 117-18 (2d Cir. 1995)....................................19, 20

*United States v. Comstock,*
   560 U.S. 126, 133 (2010)....................................47

*United States v. Prevezon Holdings Ltd.,*
   --- F.3d ----, No. 16-132-CV, 2016 WL 6069181, at *7 (2d Cir. Oct. 17, 2016) ....................................2

*Westerbeke Corp. v. Daihatsu Motor Co.*,
   304 F.3d 200, 220 (2d Cir. 2002)............................................................30

**STATUTES**

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 1331 ..............................................................................................1

28 U.S.C. § 1337 ..............................................................................................1

29 U.S.C. § 201 et Seq. ....................................................................................1

29 U.S.C. § 215(a)(3) ...................................................................................6, 24

29 U.S.C. § 216(b) ...........................................8, 18, 20, 24, 34, 38, 45

9 U.S.C. § 1 .........................................................................11, 16, 41

9 U.S.C. § 2 .........................................................................11, 16

NYLL § 193 ......................................................................................................4

NYLL § 195 ......................................................................................................4

NYLL § 198 ......................................................................................................4

NYLL § 215 ......................................................................................................6

## I. JURISDICTIONAL STATEMENT

Plaintiff-Appellant Melody Bynum ("Plaintiff," "Appellant" or "Bynum") filed this action in the district court on October 30, 2015 against Defendant-Appellee Maplebear Inc. ("Defendant," "Appellee," "Maplebear" or "Instacart"). The district court had subject matter jurisdiction over Plaintiff's FLSA claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et Seq., and pursuant to 28 U.S.C. §§ 1331, 1337. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Plaintiff timely filed her notice of appeal (A218 - A219)[1] on September 29, 2016 from the judgment (A217) entered in favor of Defendant, in the United States District Court, Eastern District of New York, on September 19, 2016. Plaintiff's appeal is from a final judgment (A217) and orders (A103 - A126; A193-A216) that dismissed all her claims.

Importantly, Defendant in its notice of motion requested dismissal after arbitration was compelled, and only requested a stay in the alternative. As such, the district court should have dismissed the action after compelling arbitration in its February 12, 2016 order. In *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir.), the Second Circuit held that a stay was required after arbitration was compelled – but the notice of motion in *Katz* only requested a stay and not dismissal as in this case. See *Katz v. Cellco P'ship,* SDNY Case No. 12-9193, ECF No. 21 (VLB).

---

[1] "A" in this and other citations used in this brief refers to the joint appendix. For example, "A218" refers to page 218 of the joint appendix.

1

Even if the district court did not enter final judgment dismissing the case, this Court would have jurisdiction under the collateral order doctrine. See *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013). This Court would also have jurisdiction because it can treat this appeal as a petition for a writ of mandamus. See *In re Repetitive Stress Injury Litigation*, 35 F.3d 637 (2d Cir. 1994). The requirements for a writ of mandamus are more easily satisfied in this case than in the very recent case of *United States v. Prevezon Holdings Ltd.*, --- F.3d ----, No. 16-132-CV, 2016 WL 6069181, at *7 (2d Cir. Oct. 17, 2016), in which this Court treated the appeal as a writ of mandamus and found that the requirements for issuing the writ were met.

## II. ISSUES PRESENTED FOR REVIEW

**ISSUE 1:** Whether individual FLSA claims are nonarbitrable, especially in light of the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 740 (1981), rejecting arbitration under the FLSA?

Standard of Review: De Novo

**ISSUE 2:** In the event FLSA claims are found to be arbitrable, whether Plaintiff's purported pre-dispute waiver of the FLSA right to maintain her case in court, is valid and enforceable in this case, given the restrictions on the waiver of FLSA rights recognized by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), and by the Supreme Court in *D.A. Schulte,*

2

*Inc. v. Gangi*, 328 U.S. 108, 66 (1946), and *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).

Standard of Review: De Novo

**ISSUE 3:** Whether the district court had authority and jurisdiction to compel arbitration in this case under the Federal Arbitration Act ("FAA") – given that Section 1 of the FAA, excludes transportation/delivery workers like Plaintiff?

Standard of Review: De Novo

**ISSUE 4:** Whether there was an agreement or mutual assent to arbitrate in the first place, given that Defendant never signed the purported agreement in the record, among other factors?

Standard of Review: De Novo

### III. STATEMENT OF CASE – RELEVANT FACTS

Defendant operates a nationwide transportation/delivery business – picking, handling and delivering groceries and a variety of household items from national chain stores such as Safeway, PETCO, Costco, and Whole Foods Market, to customers of these stores. (Complaint - A9, ¶ 9; Wake Decl. - A20 - A21, ¶ 1-7). Ms. Bynum was hired and employed by Defendant to perform delivery/transportation services from October 2014 to on or about October 7, 2015. (A9, ¶ 11; A10, ¶ 24;

3

A10-A12, ¶ 13-37). Ms. Bynum's employment and work for Defendant centered around Defendant's smartphone app. (A20-A21, ¶ 4-7). At all relevant times, Plaintiff lived in New York and worked for Defendant in New York. (A9-A10, ¶ 7, 12).

During her employment with Defendant, Plaintiff worked over forty hours a week but was not paid overtime wages as required by the FLSA and NYLL. (A11, ¶ 26; A11, ¶ 25, 27). Plaintiff worked 45-60 hours a week for Defendant (A11, ¶ 27), and was paid at a rate of $10-$18 an hour at separate times during her employment with Defendant. (A11, ¶ 25). Using average weekly hours of 52.5 hours and an average hourly rate of $14.00 per hour, we have unpaid overtime wages under the FLSA of approximately 12.5hrs/wk x $7/hr x 50wks = $4,375.

Plaintiff also asserted a claim for reimbursement because she was required by Defendant to incur job-related expenses for which she was not reimbursed, in violation of NYLL § 193. (A11, ¶ 30-31; A26, ¶ 2). In addition, Plaintiff may be entitled to penalties because Defendant did not provide her with the wage notice and wage statements required by NYLL §§ 195, 198. (A11-A12, ¶ 32-33). In addition, Defendant did not pay any workers compensation, unemployment insurance, or any Social Security or FICA taxes for Plaintiff and other workers. (A12, ¶ 34; A27, ¶ 4.1-4.2).

Defendant deprived Plaintiff and other employees of the benefits of all of the employment laws, because Defendant misclassified Plaintiff as an independent contractor and imposed an independent contractor agreement upon her. (A26 - A31).

The FLSA does not permit employees and employers to agree to waive an employee's status as an employee, because that would result in waiver of all FLSA rights – the FLSA only covers employees. See *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) (holding "an employer's self-serving label of workers as independent contractors is not controlling," and applying an *objective* "economic reality" test.) (A9, ¶ 13-37). See also, *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008). Because the employment and overtime laws such as the FLSA only cover employees, Defendant enriched itself by possibly millions of dollars intended for its employees, by misclassifying those employees as independent contractors. Defendant's misclassification of workers also deprives federal, state and local governments of a variety of taxes, fees and contributions tied to the employment relationship. Misclassification of workers also place at a disadvantage, other businesses that correctly classify their workers as employees.

Given the immense financial gain that flows from the misclassification of its workers as independent contractors, Defendant imposes on its employees like Plaintiff, independent contractor "agreements" with draconian arbitration provisions – which serves to keep Defendant's business practices and employment violations out of court and away from public scrutiny. (A26 – A31). It does not appear that these arbitration provisions (A29) are intended to provide an arbitral forum – it appears that they are intended to provide no forum at all by imposing costs – financial and otherwise, that employees like Plaintiff cannot afford.

5

Moreover, despite the anti-retaliation and anti-discrimination provisions of the FLSA (29 USC § 215(a)(3)), and the New York Labor Law (NYLL § 215), Defendant forced Plaintiff to waive all her FLSA and NYLL rights and as a condition of employment with Defendant, by imposing on Plaintiff an adhesion "independent contractor" agreement - which also contained the following arbitration clause (A29, ¶ 7.1):

> Following the full opportunity to discuss and negotiate over this dispute resolution procedure, the Parties agree that to the fullest extent permitted by law, any controversy, dispute or claim arising out of or relating to the Services performed by the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), shall be submitted to and determined exclusively by binding arbitration.

Probably realizing that an adhesion contract would be problematic, Defendant erroneously stated in the above arbitration provision that it was "Following the full opportunity to discuss and negotiate over this dispute resolution procedure." Even the district court found that, "the contract signed by plaintiff appears to be one of adhesion—it was offered on a take-it-or-leave-it basis and, despite language suggesting otherwise." (A117).

In addition, Plaintiff did not have the benefit of legal counsel at the time of the purported arbitration agreement. Plaintiff did not know what arbitration is or how it works (A97:1-6), and by extension, how arbitration will impact her employment

6

rights. In fact, Plaintiff did not even know she was a party to an arbitration agreement. (A95:13-16 – February 8, 2016 hearing transcript). The agreement was allegedly signed by Plaintiff over the internet. (A95 – A97). The purported agreement does not specifically, clearly and unmistakably mention the FLSA or FLSA claims. (A29). Notably, the purported arbitration agreement in the record does not appear to be signed by Defendant. (A31).

In terms of the arbitrator's fees and expenses, the arbitration agreement states in relevant part as follows (A29, ¶ 7.3):

The parties will equally advance arbitrator expenses and fees

Arbitrators through JAMS can charge from $550/hr to $850/hr or more, not including administrative and other fees[2]. Misclassification cases are generally very fact-intensive and because Defendant's entire business model depends on the misclassification of workers, misclassification cases tend to be heavily litigated and very time-consuming. Even if we conservatively assume that an arbitrator will spend only 100 hours on this case, the arbitration agreement would require Plaintiff to pay $27,500 to $42,500 or more in fees to the arbitrator – about six to eight times more than Plaintiff's unpaid overtime wages under the FLSA of about $4,375. The fees or even the rates of the arbitrators are not disclosed in the arbitration agreement. Given Plaintiff's relatively low income and the relatively small value of her claims, Plaintiff

_____

[2] In a recent non-binding mediation conducted by JAMS in which my firm participated, the rates for the list of mediators ranged from $550 an hour to $850 an hour, not including administrative and other fees. It is likely that arbitration rates are higher than mediation rates.

and other workers will be forced to waive their FLSA overtime rights rather than pursue prohibitively expensive arbitration. Even the district court found that "A worker such as plaintiff would be forced out of the game by fear of a financial cost that her opponent could easily absorb." (A118).

In terms of legal fees, the arbitration agreement states in relevant part as follows (A29, ¶ 7.3):

> in his discretion, the arbitrator may award fees and costs to the prevailing party

In enacting the FLSA, Congress provided for legal fees to the prevailing employee but not to the prevailing employer. See 29 USC § 216(b). Defendant turned the FLSA upside down and substantively changed the remedies in terms of allowing the arbitrator to force Plaintiff to pay Defendant's fees if Plaintiff loses. Defendant in this action, is represented by several attorneys from a large law firm. As such, even assuming a conservative 200 hours spent on arbitration, and an average rate of $500/hr, Plaintiff may be liable for $100,000 or more in Defendant's attorney's fees – the possibility of such a huge liability that greatly exceeds her possible recovery in this case, will obviously deter Plaintiff and other workers from using an arbitral forum – precisely what it seems Defendant intended. In another case involving Defendant herein, the court concluded that this type of fee-shifting provision "would permit Instacart to deter potential plaintiffs … from pursuing their claims in fear that

8

they would be required to pay Instacart's fees and costs should they not prevail." See *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 943 (N.D. Cal. 2015). By way of elaboration, every dollar spent in arbitration beyond what would be required in court, is a de facto and improper waiver of Plaintiff's overtime wages under the FLSA, and any such expenditure beyond the amount of wages, constitutes a penalty for exercising FLSA rights.

In terms of venue, the adhesion arbitration agreement states in relevant part as follows (A29, ¶ 7.2):

> The arbitration shall be administered by JAMS at its office located at Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

Litigating in an arbitral forum and then in a state court forum (A29; ¶ 7.4), thousands of miles away in California is simply not feasible, practical or affordable for Plaintiff, and such a venue provision will deter her and other workers in the first place, from pursuing their FLSA claims in arbitration.

Probably realizing that the standard of review of an arbitrator's decision may lead to an improper forfeiture or waiver of Plaintiff's FLSA rights, which would render arbitration improper, Defendant in the purported arbitration agreement seeks to broaden the scope of review and states in relevant part as follows:

> (A29, ¶ 7.3) The arbitrator shall not have the power or authority to commit errors of law or legal reasoning

> (A29, ¶ 7.4) Any action to review the arbitration award for legal error or to have it confirmed, corrected or vacated shall be decided pursuant to

9

California law and shall be filed and maintained in a California state court of competent jurisdiction.

However, the Supreme Court has rejected, as inconsistent with the FAA, arbitration provisions which seek to allow for correction of arbitration awards, "(i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." See *Hall Street. Associates., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 579 (2008). See also, *Hall Street Associates*, 552 U.S. 576, 578 ("The question here is whether statutory grounds for prompt vacatur and modification may be supplemented by contract. We hold that the statutory grounds are exclusive.").

The arbitration provision purports to incorporate the JAMS' Rules for employment arbitration but clearly states that (A29, ¶ 7.2):

> In the event of any conflict between the Rules and this Agreement, this Agreement shall apply

In other words, if JAMS' Rules theoretically requires the employer to pay all arbitrator fees, the Agreement requiring Plaintiff to pay half of those hefty fees, will govern. See *Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 465, 928 N.E.2d 383, 386 (2010) ("[W]e agree with the lower courts that the terms of the parties' Arbitration Agreement, rather than the AAA rules, controlled."). The exact set and scope of JAMS' rules that may apply is also not clear, and the same is true about the California laws that may govern, and the interplay with Second Circuit law. Even where the employer pays all arbitrator fees, there is an insurmountable appearance of

10

bias and conflict of interest where the decision-maker is being paid for in full by

Plaintiff's adversary.

Very significantly, the purported arbitration agreement states in relevant part as

follows (A29, ¶ 7.4):

> The Parties agree that the enforceability of this Agreement shall be
> governed by the Federal Arbitration Act (9 U.S.C. 2), and acknowledge
> that Company's business and the nature of Contractor's services involve
> interstate commerce

However, if the FAA governs, arbitration cannot be compelled in this case

under the FAA because Section 1 of the FAA specifically excludes

transportation/delivery workers like Plaintiff and states in relevant part as follows (9

U.S.C.A. § 1):

> nothing herein contained shall apply to contracts of employment of
> seamen, railroad employees, or any other class of workers engaged in
> foreign or interstate commerce.

See also *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001) (holding that §

1 "exempts from the FAA only contracts of employment of transportation workers.").

The parties agree that Plaintiff's "services involve interstate commerce," and there is

no genuine dispute that she was a transportation/delivery worker throughout her

employment.

## IV.  STATEMENT OF THE CASE – PROCEDURAL HISTORY

Plaintiff-Appellant Melody Bynum, filed the complaint in this action on

October 30, 2015 in the Eastern District of New York, against Defendant-Appellee

Maplebear Inc., seeking unpaid overtime wages and related recovery under the federal Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL"). (Complaint - A8 – A17).

On December 15, 2015, (A18 – A19), Defendant filed a motion to compel arbitration, which was opposed by Plaintiff on a variety of grounds explained in this brief. On February 8, 2016, the district court held a hearing on the motion at which it questioned Plaintiff and a representative of Defendant and took arguments from counsels for the parties. (A81-A102). On February 12, 2016, the district court issued an order compelling arbitration and staying the action (A103 - A126)– even though Defendant's primary relief sought was dismissal and not a stay. The district court also struck the costs and venue provision as unconscionable. However, arbitration still posed significant financial and other risks that Plaintiff could not afford. (A161 – A168, ¶ 14-21). As such, Plaintiff declined arbitration (A127-A128), and filed a notice of appeal on February 29, 2016. (A129-A130).

On March 9, 2016, Defendant filed a motion to dismiss the appeal on the grounds that the Second Circuit lacked jurisdiction. On July 13, 2016, the Second Circuit dismissed the appeal and stated as follows (A139-A140):

> The district court should determine, in the first instance, whether the Appellant's waiver of the right to arbitrate entitles the Appellant to termination of the existing stay and dismissal of the action, and/or whether certification under 28 U.S.C. § 1292(b) is appropriate. We do not now decide whether dismissal of the action based on the waiver would be proper, whether such a dismissal could be appealed, or whether

12

mandamus review would be the only means to challenge whatever district court order is ultimately entered.

On August 12, 2016, the district court issued an order directing the parties to brief the issues and make any required motion as per the Second Circuit's mandate. (A5). On August 18, 2016, Plaintiff made a motion for certification under 28 U.S.C. 1292(b), or in the alternative, for a ruling that Plaintiff's decision to forego arbitration made the order final and appealable. Following a hearing on September 8, 2016, the district court issued a Memorandum and Order on September 19, 2016 (A193-A216) denying certification but dismissing the case with prejudice - final judgment was entered on September 19, 2016. (A217).

Plaintiff filed a notice of appeal on September 29, 2016. (A218-A219). This brief now constitutes the perfection of the appeal.

## V.  SUMMMARY OF ARGUMENT

The FLSA is a "uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 207 (2d Cir. 2015). "The FLSA is distinct from all other employment statutes." *Cheeks* 796 F.3d at 205, citing *Socias v. Vornado Realty L.P.* The refusal of the district court to accept that the FLSA is "a uniquely protective," statute and the reasons for this conclusion, is at the root of the erroneous rulings by the district court.

At the outset, the district court based its entire decision on the Federal Arbitration Act ("FAA"). However, the district court did not have jurisdiction to

13

compel arbitration under the FAA because transportation/delivery workers like Plaintiff are specifically excluded under Section 1 of the FAA. See i.e., *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001).

Second, Congress intended FLSA claims to be nonarbitrable. In this regard, there is no dispute in this action that if the purported arbitration agreement was in a union context, Plaintiff's FLSA claims would be nonarbitrable under the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 740 (1981). The district court was grossly wrong in arbitrarily and conveniently limiting *Barrentine* to the union context in order to escape its holding. Significantly, the Supreme Court's decision in *Barrentine* was based on the text of the FLSA and the remedial purpose and policy of the statute – which do not change based on context – union or otherwise. In addition, the rationale and logic for the Supreme Court's decision in *Barrentine*, apply with even greater force to the instant case where Plaintiff did not have the protection of an attorney or even a union at the time of the purported adhesion arbitration agreement. Moreover, FLSA claims are nonarbitrable because this Court in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), held that FLSA rights cannot be waived or disposed of without judicial or DOL approval. An arbitrator picked by the parties is not like a judge who is accountable to the public and responsible for protecting the public's interests in the FLSA.

Third, even if FLSA claims are arbitrable, the purported arbitration agreement is unenforceable under *Cheeks*. This Court in *Cheeks* prohibited waiver of FLSA rights, even where counsel is involved, because of the inherent inequality of

14

bargaining power between employer and employee in FLSA cases. The U.S. Supreme Court in *Brooklyn Savings* and Gangi also cited this inherent inequality of bargaining power in invalidating waivers of FLSA rights. Here, the district court itself found that Plaintiff had no bargaining power - and Plaintiff was without legal counsel at the time she purportedly waived her FLSA rights to a judicial forum.

If this Court holds that the FLSA right to a judicial forum can be waived - at minimum, it should require that such a waiver can be valid only if: 1) the waiver occurs after a bona fide dispute arises; 2) the employee is represented by legal counsel in connection with the waiver; and 3) the waiver is specific, clear and unmistakable. Such protections would be necessary to balance any need for binding arbitration with current FLSA precedents, the FLSA's status as a "uniquely protective statute," and the reasons therefor.

## VI. ARGUMENT

### 1. A DE NOVO STANDARD OF REVIEW APPLIES

The Second Circuit will "review de novo a district court's grant of a motion to compel arbitration." *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016). This Court is free to reach and impose a different conclusion because the district court is owed no deference. In *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), the Second Circuit stated that, 'in deciding motions to compel, courts apply a "standard similar to that applicable for a motion for summary judgment." In *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004), the Second Circuit set forth the inquiries a court must conduct in determining whether

15

arbitration should be compelled in a case under the Federal Arbitration Act ("FAA"), and stated in relevant part as follows:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

Even if there is an agreement to arbitrate, a court may lack the jurisdiction power or authority to compel arbitration under the FAA because Section 1 of the FAA specifically excludes transportation/delivery workers like Plaintiff and states in relevant part as follows (9 U.S.C.A. § 1):

> nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

See also *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001) (holding that § 1 "exempts from the FAA only contracts of employment of transportation workers.").

In addition, the FAA does not require enforcement of arbitration agreements that are unenforceable because of a contract law defense such as unconscionability, illegality, fraud, duress etc. See 9 U.S.C. § 2. Even where Congress did not intend for certain statutory claims to be nonarbitrable or where contractual unconscionability does not exist, an arbitration agreement may still be illegal because it frustrates or conflicts with another federal statute. In *Lewis v. Epic Sys. Corp.*, -F.3d -, 2016 WL 3029464 (7th Cir. May 26, 2016), the Court of Appeals reasoned that where the FAA

16

and another federal statute are in tension, we need not dwell on whether the other statute trumps the FAA. The *Lewis* Court pointed out that if the arbitration agreement violates or conflicts with a federal statute it would be illegal, and therefore invalid under the FAA's savings clause because illegality is a contract defense under the FAA. See also *Morris v. Ernst & Young, LLP*, -F.3d-, 2016 WL 4433080 (9th Cir. Aug. 22, 2016).

Regardless of whether an arbitration agreement is otherwise valid, it cannot be enforced if Congress intended the claims in question to be nonarbitrable. In addition to the text of the subject statute, the intent of Congress can be discerned from the legislative history and purpose of the statute. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (U.S. 1991), *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) and *Cheeks*.

Notably, this Court in *Cheeks* 796 F.3d at 203, stated in relevant part as follows:

> In rejecting the settlements, the Eleventh Circuit noted that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Id. (internal quotation marks omitted).

The above quoted language was derived from the Supreme Court's decision in *Barrentine* 450 U.S. at 740, and was the basis for rejecting arbitration in that case – that the costs and other aspects of arbitration may lead to a partial or total loss of

17

FLSA rights, including the right to overtime wages, and of course, the precious FLSA right to a judicial forum.

### 2. AS SET FORTH BY THE SUPREME COURT IN *BARRENTINE*, CONGRESS INTENDED FLSA CLAIMS TO BE NONARBITRABLE

There is no dispute in this action that if the purported arbitration agreement was in a union context, Plaintiff's FLSA claims would be nonarbitrable under the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 740 (1981). In an attempt to escape the reach of *Barrentine*, the district court, at Defendant's urging, arbitrarily limited *Barrentine* to the union context. However, as explained herein, *Barrentine* contains no such limitation, and the bases, logic and reasoning for the Supreme Court's holding in *Barrentine*, apply with equal or greater force in the present context where Plaintiff did not have the protections of a union.

### A. THE SUPREME COURT IN *BARRENTINE* ASCERTAINED THE RELEVANT INTENT OF CONGRESS BASED ON THE TEXT AND REMEDIAL PURPOSE OF THE FLSA – WHICH DO NOT CHANGE FROM CASE TO CASE AND DO NOT DEPEND ON UNION INVOLVEMENT

In *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981), the U.S. Supreme Court stated in relevant part as follows:

> The statutory enforcement scheme grants individual employees broad access to the courts. Section 16(b) of the Act, 29 U.S.C. § 216(b), which contains the principal enforcement provisions, permits an aggrieved employee to bring his statutory wage and hour claim "in any Federal or State court of competent jurisdiction." No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute.

In rejecting arbitration in *Barrentine*, the Supreme Court interpreted the above text of the FLSA as establishing a right to bring FLSA cases in federal court regardless of any arbitration provision – even if we disagree with the Supreme Court's reading of the FLSA's text, we are bound by it. By way of further confirmation, the Supreme Court in *Barrentine*, 450 U.S. at 745, went on to state:

> Congress **intended** to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

The Supreme Court's holding in *Barrentine* that FLSA claims are not subject to arbitration has been confirmed by the Second Circuit itself. In this regard, the Second Circuit in *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 850 (2d Cir. 1987), interpreted *Barrentine* as "finding congressional **intent** that Fair Labor Standards Act of 1938 claims be nonarbitrable because of conflict between arbitration and FLSA's purposes." Yet, the district court did the exact opposite and conveniently and arbitrarily limited *Barrentine* to the union context. The Second Circuit has rejected a similar attempt to limit *Barrentine*. The Second Circuit in *Tran v. Tran,* 54 F.3d 115, 117-18 (2d Cir. 1995), reaffirmed that FLSA claims are nonarbitrable, and stated in relevant part as follows:

> The district court in this litigation, in its March 3, 1994 opinion, assigned what amounts to a narrow reading of *Barrentine* …

19

However, in this Court's view, *Barrentine* may not be so read.

…In the light of *Barrentine* and its renewed vitality under *Gilmer,* this Court hereby reverses the holding below of the district court as set forth in the latter's March 3, 1994, opinion "that the plaintiff was required to exhaust his arbitral remedy prior to filing" his FLSA claims. *Tran v. Tran,* 847 F.Supp. at 309.

*Tran* highlights the aggressive but erroneous approach taken by district judges to limit *Barrentine* in order to push cases off their dockets and into arbitration. In *Tran*, the district court tried to limit *Barrentine* to situations where the employees first attempt to use the arbitration process before going to court because that was the sequence of events in *Barrentine*. However, the district court's distinction in *Tran* (before versus after arbitration), like the district court's distinction in this case (union versus non-union context), while convenient in facilitating an order compelling arbitration, was illogical and irrelevant because the *Barrentine* decision was based on the intent of Congress and the remedial purpose of the FLSA – which who do not depend on a union context or exhaustion of administrative remedies.

### B. BY ALLOWING SUITS IN *ANY STATE OR FEDERAL COURT*, CONGRESS INTENDED TO GIVE EMPLOYEES A CONVENIENT, AND INEXPENSIVE FORUM – AN ARBITRAL FORUM IS INCONSISTENT WITH THIS INTENT OF CONGRESS

A few years after the FLSA was enacted, the court in *Booth v. Montgomery Ward & Co.*, 44 F. Supp. 451, 452, 455-56 (D. Neb. 1942), addressed the intent and purpose of the enforcement and remedies provisions of the FLSA at 29 U.S.C. § 216(b), and stated in relevant part as follows:

20

> The reasons for that course are manifest. It was and is obvious that, except in very rare group of class actions, the amount of potential recovery under the act will be so small that the aggrieved employee will be tempted to abandon the vindication of his right unless he may institute his suit and prosecute it to effect in a court of his own choice, within his immediate neighborhood, and without burdensome and disproportionate expense both in money and in time. To that end, the court considers that the congress employed apt language, in providing that the suits arising under the law might be 'maintained in any court of competent jurisdiction.'

See also *Fredman v. Foley Bros.*, 50 F. Supp. 161, 162 (W.D. Mo. 1943)

("Obviously Congress intended to serve the interest of employees when it provided

that actions might be 'maintained' in any court of competent jurisdiction.").

These early cases confirm the obvious intent of Congress based on the text,

purpose and legislative history of the FLSA – that the FLSA will be undermined if

the right to a judicial forum is waived, especially where the FLSA wages are small in

amount, as is the case here.

## C. THE JUDICIAL APPROVAL REQUIREMENT AND THE GATEKEEPER ROLE OF JUDGES UNDER THE SECOND CIRCUIT'S DECISION IN *CHEEKS* FURTHER CONFIRM THAT FLSA CLAIMS ARE NONARBITRABLE

In *Cheeks* 796 F.3d at 206, the Second Circuit held that FLSA rights cannot be

waived without judicial or U.S. DOL approval, and disapproved of contracts and

provisions in "tension with the remedial purposes of the FLSA." The requirement that

the resolution of FLSA claims be approved by a judge is further powerful evidence

that Congress intended FLSA claims to be nonarbitrable. In this regard, the Supreme

Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 21 (U.S. 1991), stated

in relevant part as follows:

> the ADEA's flexible approach to claims resolution, which permits the
> EEOC to pursue informal resolution methods, suggests that out-of-court
> dispute resolution is consistent with the statutory scheme

However, unlike ADEA claims which can be settled privately through out-of-

court dispute resolution, FLSA claims cannot be so settled – FLSA settlements are

not binding unless approved by a court or the U.S. Department of Labor. See *Cheeks,*

*Gangi* and *Brooklyn Savings*. This "suggests that out-of-court dispute resolution [is

not] consistent with the [FLSA] statutory scheme."

Moreover, arbitration is inherently incompatible with the judicial approval

requirement mandated by the Second Circuit in *Cheeks*. Because an arbitrator is not a

judge, FLSA claims cannot be subject to arbitration under *Cheeks*. Judges are public

officials who have a "gatekeeper" role to protect the public's interests in FLSA

compliance, enforcement, and cases from start to finish. By contrast, an arbitrator is

only obligated to serve the private interests of the parties based on their arbitration

agreement – the Supreme Court in *Barrentine* 450 U.S. at 743, also referenced this

distinction and found it problematic.

Also, arbitration of FLSA claims is also prohibited in this case because of the confidentiality of the arbitration proceedings under JAMS' rules[3]. *Cheeks*, as well as district court decisions before and after *Cheeks*, instruct us that FLSA proceedings cannot be confidential – because of the public's interests in FLSA proceedings and enforcement, and the informational goals of the FLSA. The Second Circuit in *Cheeks*, 796 F.3d at 206, disapproved of "highly restrictive confidentiality provisions ... in strong tension with the remedial purposes of the FLSA." Even before *Cheeks*, the overwhelming majority of courts that addressed the issue held that confidentiality violates the FLSA and the public policy behind it. See *Dees v. Hydradry, Inc.*,706 F.Supp.2d 1227 (M.D. Fla., 2010) ("compelled silence unreasonably frustrates implementation of the "private-public" rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the Statute."). *Moreno v. Nassau Country Club*, 2013 WL 5788730, 2 (E.D.N.Y., 2013) ("By including a confidentiality provision, the employer thwarts the informational objective of the [FLSA] notice requirement by silencing the employee who has vindicated a disputed FLSA right."). *Bouzzi v. F & J Pine Restaurant, LLC*, 841 F.Supp.2d 635, 640 -641 (E.D.N.Y., 2012) ("confidentiality contravenes the legislative intent of the FLSA"). By way of emphasis, as the court explained in *Dees*, because Plaintiff has a right under the FLSA to speak about FLSA matters, forcing confidentiality on her in effect

---

[3] See JAMS' rules # 21, at
http://www.jamsadr.com/files/Uploads/Documents/JAMSRules/JAMS_streamlined_arbitration_rules-2014.pdf

23

requires her to waive antiretaliation rights under the FLSA (29 USC § 215(a)(3)) in the event she breaches the confidentiality agreement and is subject to penalty.

The public's interest here is more profound in this case because of the misclassification issue. By misclassifying low-skilled, low-wage workers like Plaintiff, Defendant is depriving federal, state and local governments of payroll taxes, unemployment insurance premiums, workers compensation premiums etc. Arbitration also inhibits the relevant government agencies from monitoring the public docket and intervening where necessary, to protect the public's interests.

### D. THE MADATORY ARBITRATION PROVISIONS ARE ESPECIALLY INCONSISTENT AND IN CONFLICT WITH ANTI-RETALIATION AND ANTI-DISCRIMINATION PROVISIONS OF THE FLSA AND NYLL

In this case, Plaintiff was required to sign the mandatory arbitration provision as a condition of her employment with Defendant. In other words, if Plaintiff did not waive her FLSA right to bring her FLSA claims in a judicial forum – a protected activity under the FLSA at 29 USC § 215(a)(3), § 216(b), Defendant would have subjected Plaintiff to a drastic adverse employment action in the form of denial of employment. Such a requirement, provision or policy is not only in "strong tension with the remedial purpose of the FLSA" (*Cheeks*, 796 F.3d at 206), it also violates the FLSA at 29 USC § 215(a)(3), and New York Labor Law ("NYLL") 215(1)(a).

Similarly, based on *Cheeks*, the district court in *Reyes v. HIP at Murray Street, LLC*, *et al*, 15-cv-00238, ECF No. 60 (LGS), invalidated a "provision prohibiting

24

Plaintiffs from obtaining future employment from Defendants," because it was in

"'strong tension with the remedial purposes" of the FLSA. With the renewed focus on

the FLSA occasioned by *Cheeks*, "no employment" clauses which were common

before *Cheeks*, have now disappeared because they violate the FLSA.

The FLSA and NYLL specifically protect the right to bring a court case

without suffering an adverse employment action such as termination or denial of

employment. However, that is precisely the situation here where employment would

be denied if the employee does not waive the right to bring a case in court.

### E.  MANDATORY ARBITRATION OF FLSA CLAIMS HAS BECOME COUNTER-PRODUCTIVE AND UNDERMINES THE PURPOSE OF THE FAA AND FLSA

The purpose of arbitration under the FAA is to ease court congestion, and to

give the parties their choice of forum for resolution of their disputes. However, this

goal is undermined in FLSA cases where arbitration has become counterproductive.

If defendant had not moved to compel arbitration, this case would have most likely

followed the path of most FLSA cases – settled before motion practice and even

before the initial court conference. Notably, both the SDNY and EDNY have robust

mediation programs. However, as this case demonstrates, adhesion arbitration

agreements like we have here, are a recipe for litigation. First, most employees appear

to be unaware that they are parties to arbitration agreements – arbitration provisions

are usually buried in pages of legalese an employee is asked to sign during the hustle

at hiring time. Second, the first time most employees appear to know of the

arbitration agreements is when the employer moves to compel arbitration. Third, the arbitration agreements are almost always very one-sided in favor of the employer and contain horrific costs and venue provisions as in this case.

It seems the whole point of these arbitration agreements is not to provide the employee with an arbitral forum, but to deprive the employee of any forum by waiving the judicial forum and imposing horrific arbitrations costs and deterrence. As such, where an arbitration agreement is at play, the settlement value of the case drops by about 90 percent or more – this is because the employee cannot afford the exorbitant costs of arbitration and the employer has all the advantages having unilaterally drafted and imposed the arbitration agreement. (A161-A168, 14-21)

Therefore, an employee is faced with two highly undesirable choices when the employer makes a motion to compel arbitration: 1) surrender and settle for peanuts – about 90 percent less than the claims are worth; or 2) oppose the motion to compel arbitration at very great expense. Countless other employees are likely deterred by the costs and risks of arbitration from even asserting a claim in the first place – precisely what the employers' goal seems to be. See *Cobarruviaz* 143 F. Supp. 3d at 943. Such could not have been what Congress intended when it passed the FAA or the FLSA. As the old saying goes – the road to (arbitration) hell is paved with good intentions.

### 3. THE DISTRICT COURT'S ATTEMPTS TO DISTINGUISH *BARRENTINE* EASILY FAIL

### A. THE FAA IS INAPPLICABLE IN THIS CASE, BUT THE HOLDING AND REASONING IN *BARRENTINE* APPLIES WITH EQUAL OR GREATER FORCE UNDER THE FAA

We have explained below that the FAA is inapplicable to this case because transportation/delivery workers like Plaintiff are exempt under Section 1 of the FAA. We will nonetheless demonstrate that the district court's attempts to distinguish *Barrentine*, fail. The district court tried to distinguish *Barrentine* on two grounds and set forth the first reason as follows (A122):

> *First*, *Barrentine* was not decided under the FAA so the statute's "liberal policy favoring arbitration" was not at issue.

At the outset, it is not disputed that the FAA does not govern statutory claims which Congress intended to be nonarbitrable - like the FLSA claims in this action. Second, the FAA also does not apply in this case because transportation/delivery workers like Plaintiff are exempt under Section 1 of the FAA. Third, the FAA recognizes contract defenses and the FAA does not require enforcement of arbitration provisions which are unconscionable or illegal under another law such as the FLSA. See 9 USC § 2. Fourth, the FAA does not require arbitration where the right to a judicial forum was not properly waived. In this regard, under *Cheeks, Gangi,* and *Brooklyn Savings*, a waiver of FLSA rights in this case is unenforceable because of the inherent inequality of bargaining power. In addition, the purported waiver of statutory rights here, was not clear and unmistakable – the FLSA was not even

27

mentioned in the purported waiver. (A29). Fifth, as the Supreme Court pointed out in *Barrentine* 450 U.S. at 734, the public policy and remedial purpose of the FLSA overcomes any policy favoring arbitration.

Sixth, the policy favoring arbitration under the federal Labor Management Relations Act ("LMRA"), which was at issue in *Barrentine*, is equally strong or stronger than the policy favoring arbitration under the FAA. See *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Therefore, any attempt to distinguish *Barrentine* on grounds that the FAA has a stronger policy favoring arbitration than does the LMRA, is contrary to reality and logic. The policy favoring arbitration in the union context is so strong, every union member in the United States is governed by alternative dispute resolution mechanism involving arbitration, as far as we know. Outside the union context, only about 14 percent of workers are covered by arbitration agreements – reflecting the fact that arbitration is much better suited to a union context where there is more equality of bargaining power between the union and the employer in negotiating and implementing arbitration procedures.

**B. THE HOLDING AND REASONING IN *BARRENTINE* APPLIES WITH EQUAL OR GREATER FORCE OUTSIDE THE UNION CONTEXT WHERE WORKERS HAVE LESS PROTECTIONS**

The district court set forth the second reason for distinguishing *Barrentine* as follows (A122):

> *Second*, *Barrentine* involved arbitration in the context of a collective bargaining agreement, where the claimants were represented by their unions; the relevant concern was the tension between collective representation and individual statutory rights.

Very significantly, the argument that *Barrentine* does not apply because it involved a union that may chose not to pursue an individual worker's claim, is explicitly destroyed by *Barrentine* itself, which noted that even if the conflict of interest problem with unions did not exist, arbitration of FLSA claims would still be rejected because, "even when the union has fairly and fully presented the employee's wage claim, the employee's statutory rights might still not be adequately protected."

### (i) ARBITRATION IN THE UNION AND NON-UNION CONTEXTS IS CONTROLLED BY CONTRACT AND WAIVER OF RIGHTS – WHICH CONFLICT WITH THE FLSA

Arbitration in the union and non-union contexts is based on contract and the waiver of rights but this creates an inherent conflict with the FLSA which does not allow private waiver of rights. The Supreme Court in *Barrentine*, 450 U.S. at 744, elaborated as follows:

> Because the arbitrator is required to effectuate the intent of the parties, rather than to enforce the statute, he may issue a ruling that is inimical to the public policies underlying the FLSA, thus depriving an employee of protected statutory rights.

See also *Aimcee Wholesale Corp. v. Tomar Products, Inc.*, 21 N.Y.2d 621, 626-27, 237 N.E.2d 223 (1968). As with union arbitration, an arbitrator outside the union context is "required to effectuate the intent of the parties rather than to enforce

the statute." This concern is especially great in this case because an arbitrator here can erroneously rule that Plaintiff waived her rights to the protections of the FLSA and NYLL and her rights to wages, by signing an "independent contractor" agreement (only employees are protected under the FLSA – not independent contractors), even though FLSA rights, including the right to overtime wages cannot be waived by agreement or conduct. See *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) (holding "an employer's self-serving label of workers as independent contractors is not controlling," and applying an *objective* "economic reality" test.) (A9, ¶ 13-37). See also *Cheeks, Brooklyn Savings, Gangi* and *Caserta v. Home Lines Agency,Inc.*, 273 F.2d 943, 944, 946 (2d Cir.1959).

A court will generally lack the power to correct such an erroneous ruling and improper waiver of FLSA rights/wages, given the highly deferential standard that applies to review of an arbitrator's decision. See *Hall Street. Associates., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 579 (2008). See *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002). *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997).

**(ii)  WORKERS OUTSIDE THE UNION CONTEXT HAVE LESS BARGAINING POWER, AND GREATER LIKELIHOOD OF FLSA CLAIMS BEING LOST IN ARBITRATION**

In *Barrentine*, 450 U.S. 742, the Court reasoned that an employee's FLSA claims may be lost if subjected to arbitration. That concern is many times greater

30

outside of the union context and as such, the Supreme Court's holding and reasoning in *Barrentine* applies with equal or greater force outside the union context. First, in the union context, there is really no inequality of bargaining power between the union and the employer. Unions usually have a team of skilled negotiators and attorneys who negotiate every aspect of the arbitration provisions in the Collective Bargaining Agreement ("CBA"). By contrast, Ms. Bynum had no legal representation and no ability to negotiate the adhesion arbitration contract that was forced upon her. Many have cited this equality of bargaining power as the main reason arbitration has been a success in the union context but not in the non-union context, and especially in FLSA cases. This Court's decision in *Cheeks* provides a great example of the much greater bargaining power that exists in the union context than in the non-union context. In this regard, the Second Circuit in *Cheeks,* cited the Fifth Circuit's decision in *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 253–57 (5th Cir.2012), which upheld a settlement and waiver of FLSA rights. The Second Circuit in *Cheeks,* also cited to the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir.1982), which rejected a settlement and waiver of FLSA rights. The main difference was that in *Martin* the employees were represented by a union that sufficiently protected their FLSA rights but in *Lynn's Food* the employees did not even have an attorney to represent them at the time of waiver – like Plaintiff in this case.

Second, unlike the situation here, employees in a union context do not have to pay an arbitrator's high hourly rate, or pay the legal fees of the employer in case of a lost, or travel thousands of miles to arbitrate the claims. These factors, which are present in a non-union context but not in a union context, will almost certainly deter and cause an employee to lose her claims if forced out of court and into arbitration.

Third, even where the employer pays the costs associated with arbitration, an insurmountable conflict of interest is created where the decision maker is paid for by the employee's adversary.

Fourth, the Court in *Barrentine,* 450 U.S. at 743, was also concerned that arbitrators may not possess the knowledge of the FLSA that judges possess. This concerned in magnified in the non-union context. In a union context, the arbitrators deal with labor law matters almost exclusively – the same cannot be said for arbitrators outside the union context.

Fifth, unlike an individual non-union worker like Plaintiff, union members are protected from termination without cause and have the right to strike to further leverage their bargaining power overall.

Sixth, worker protections are almost universally better in the union context than non-union context for the types of ordinary workers protected by the FLSA. Union workers receive a range of benefits such a health, retirement, other fringe benefits, and better job conditions, generally not available to similar workers outside the union context. In general, union members also receive much higher rates of pay

32

including overtime pay, than those mandated by the FLSA. This is why union

employment is so coveted by employees and strongly resisted by many employers.

### 4. EVEN IF FLSA RIGHTS ARE ARBITRABLE - AFTER *CHEEKS*, FLSA RIGHTS SUCH AS THE RIGHT TO A JUDICIAL FORUM, CANNOT BE PROSPECTIVELY WAIVED, BECAUSE OF THE INHERENT INEQUALITY OF BARGAINING POWER BETWEEN EMPLOYERS AND EMPLOYEES

In *Cheeks*, the Second Circuit reaffirmed the FLSA's strong remedial purpose

upon which *Barrentine* is based. In response to Plaintiff's arguments based on

*Cheeks*, the district court concluded that *Cheeks* "does not bear on the arbitrability of

FLSA claims," because "No question regarding the arbitrability of FLSA claims was

raised." (A125). The district court missed the mark. *Cheeks* dealt with the waiver of

FLSA rights by private agreement – which is the issue in this case – waiver of the

FLSA right to a judicial forum. An arbitration agreement is "a waiver of judicial

remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*,

500 U.S. 20, 26 (U.S. 1991).

Here, we must decide whether the purported waiver by private agreement of

the FLSA right to a judicial forum is valid. Relatedly, we must also decide whether

such a waiver also results in the impermissible waiver of the right to overtime pay

under the FLSA because of the prohibitively high costs of arbitration – or the

deterrent effect of such costs provisions, even if they are ultimately found to be

invalid.

The Second Circuit in *Cheeks*, 796 F.3d at 202, recognized that the starting point in analyzing waiver of FLSA rights is a pair of venerable Supreme Court decisions dating back to the 1940s:

> Those requiring court approval of private FLSA settlements regularly base their analysis on a pair of Supreme Court cases: Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) and D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946).

Once again, it is important to remember that an FLSA settlement agreement, is a contract/agreement that seeks to waive a variety of FLSA rights. Here, the purported arbitration agreement is also a contract/agreement – that seeks to waive the FLSA right under 29 USC § 216(b) to bring a case in any court of competent jurisdiction. The entire purported "independent contractor" agreement here is permeated with illegality because it seeks to misclassify Plaintiff as a non-employee to deny her of all rights under the FLSA, including the right to overtime wages. As such, the entire purported agreement, including the arbitration provisions must be invalidated under the FLSA.

In *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07, 65 S. Ct. 895, 902, 89 L. Ed. 1296 (1945), the U.S. Supreme Court stated in relevant part as follows:

> The [FLSA] statute was a recognition of the fact that due to the ***unequal bargaining power as between employer and employee***, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

Moreover, the same policy which forbids employee waiver of the minimum statutory rate because of ***inequality of bargaining power***, prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of liquidated damage is called for.

The Second Circuit in *Cheeks*, 796 F.3d at 205, stated as follows:

In Socias v. Vornado Realty L.P., the district court explained its disagreement with Picerni: Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and ***lack equal bargaining power***; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly. In recognition of this problem, ***the FLSA is distinct from all other employment statutes***.

Building on these precedents, the Second Circuit in *Cheeks*, 796 F.3d at 207, held that the inherent unequal bargaining power between employee and employer cannot be overcome even where the employee is represented by counsel, and stated in relevant part as follows:

However, the FLSA is a ***uniquely protective statute***. The burdens described in Picerni must be balanced against the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy ***the disparate bargaining power between employers and employees***. See Brooklyn Sav. Bank, 324 U.S. at 706–07, 65 S.Ct. 895. As the cases described above illustrate, the need for such employee protections, even where the employees are represented by counsel, remains.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32–33 (U.S. 1991), the Supreme Court addressed the issue of whether arbitration agreements in the employment context are invalid because of inequality of bargaining power and stated in relevant part as follows:

> An additional reason advanced by Gilmer for refusing to enforce arbitration agreements relating to ADEA claims is his contention that there often will be unequal bargaining power between employers and employees. Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.

Importantly, the Supreme Court in *Gilmer* recognized that the inequality of bargaining power between employer and employee is a sufficient reason to hold that arbitration agreements waiving the statutory right to a judicial forum are unenforceable in some circumstances, though not all. One of most obvious of such situations is under the FLSA, which unlike most other laws, is a "uniquely protective statute." *Cheeks*, 796 F.3d at 206. In this regard, it the Supreme Court and the Second Circuit have long ago held as unenforceable, private contracts/agreements which waive statutory rights under the FLSA - because of inherent inequality of bargaining power between employers and employees. *Cheeks, Brooklyn Savings, Gangi* and *Caserta.*

The Supreme Court in *Gilmer*, 500 U.S. at 22, seem to place great emphasis on the fact that the plaintiff in that case was an "experienced businessman" in the securities business. The same is not true in this case. Plaintiff here had no attorney, no legal training, no ability to negotiate. In any event, the Supreme Court and the Second Circuit have concluded that there is an inherent inequality of bargaining power between employer and employees and that agreements waiving FLSA rights are not enforceable – a case by case analysis is not required under the FLSA. In fact, after

*Cheeks* many district judges have explained the court approval requirement by equating FLSA cases to cases involving minors and to class action cases involving absent members where there is an inherent need for judicial protection.

However, the inequality of bargaining power and the overreaching that the Second Circuit and Supreme Court were concerned about in *Cheeks, Gangi* and *Brooklyn Savings* is especially egregious in this case. First, the district court itself confirmed that there was not just an inequality of bargaining power but that Plaintiff in this case had no bargaining power at all. In this regard, the district court, stated in relevant part as follows (A10):

> the contract signed by plaintiff appears to be one of adhesion—it was offered on a take-it-or-leave-it basis and, despite language suggesting otherwise, there does not appear to have been any actual opportunity to discuss or negotiate its terms

Even worse, the adhesion contract was a condition of Plaintiff's employment - if she did not sign it, she could not work with Defendant and earn a living – one of the worst forms of coercion. Not surprisingly, such coercion and total lack of bargaining power led to a draconian agreement requiring Plaintiff to waive all her FLSA rights by misclassifying her as an independent contractor, and requiring her to pay potentially tens or hundreds of thousands of dollars and travel thousands of miles to California if she wanted to challenge Defendant's violation of her rights in arbitration. Even the district court found the costs/fee sharing/splitting provisions and the venue provisions to be unconscionable. Nonetheless, the mere inclusion of these

37

provisions and the high cost and uncertainty of challenging them in court, are sufficient reasons for finding the FLSA claims nonarbitrable because they have the effect of deterring employees from asserting their FLSA rights in the first place.

By way of reinforcement, we will examine how the higher courts have handled the waiver of a variety of other FLSA rights. In *Brooklyn Savings* and *Gangi*, the Supreme Court held that because of the inherent inequality of bargaining power, an employee is not free to waive the right to wages and liquidated damages under the FLSA – that such a contract or agreement is illegal or void because it violates the public policy underlying the FLSA, and is therefore unenforceable. For the same reasons, waiver of the right to a judicial forum is also unenforceable under the FLSA. In addition, the waiver of the right to a judicial forum will also likely result in the improper waiver of overtime wages because of the high financial and other costs of arbitration. Moreover, if because of inequality of bargaining power, an employee is not free to waive the right to liquidated damages under the FLSA 26 USC § 216(b) – the same section that provides the right to a judicial forum, logically, an employee cannot waive the much more important right to a judicial forum, because of the very same inequality of bargaining power. In fact, Plaintiff would happily give up her right to liquidated damages if she can keep her case in court as she has the right to do under the FLSA at 29 USC § 216(b). The proof is in the pudding, and this willingness confirms that the costs/risks of arbitration in this case are still very high. (A161 – A168, ¶ 14-21).

In *Cheeks*, 796 F.3d at 206, the Second Circuit disapproved of contractual provisions, "in strong tension with the remedial purposes of the FLSA" – including but not limited overbroad releases. In terms of overbroad releases, the Second Circuit in *Cheeks*, 796 F.3d at 206, specifically disapproved of the release of "unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," that were being settled and paid for. As such, *Cheeks* prohibits the waiver of the FLSA right to a judicial forum in this action. First, there is no settlement or payment here that can include the waiver of the FLSA right to a judicial forum, or operate as consideration for such a waiver. Second, at the time of the purported waiver of a judicial forum in this action, it was unknown when a claim or dispute would even arise that would warrant the use of a judicial forum – this type of prospective waiver of rights, especially FLSA rights, is prohibited under the FLSA and *Cheeks*.

5. **IF THIS COURT FINDS THAT FLSA RIGHTS ARE ARBITRABLE, A WAIVER OF FLSA RIGHTS SHOULD ONLY BE ENFORCEABLE WHERE: 1) THE WAIVER WAS MADE POST-DISPUTE; 2) THE EMPLOYEE WAS REPRESENTED BY COUNSEL IN CONNECTION WITH THE WAIVER; AND 3) THE WAIVER WAS EXPLICIT, CLEAR AND UNMISTAKABLE**

The Second Circuit in *Cheeks*, based upon the Supreme Court decisions in *Brooklyn Savings,* and *Gangi*, held that a waiver of FLSA rights, and more specifically, the FLSA right to wages, is not enforceable even where the employee is represented by counsel, unless the waiver is judicially or U.S. DOL approved. However, if the Second Circuit finds that FLSA claims are arbitrable, a waiver of the

FLSA right to a judicial forum should only be enforceable where: 1) the waiver was made post-dispute; 2) the employee was represented by counsel at the time of the waiver and in connection with the waiver; and 3) the waiver was explicit, clear and unmistakable, in addition to the other standard requirements.

In analyzing waiver of FLSA rights, court have made a distinction between prospective waiver and retroactive waiver. Under the FLSA, it is well settled that prospective waivers are not enforceable. There is also the view that retroactive waiver is enforceable if there is a bona fide FLSA dispute between the parties. *Cheeks* 796 F.3d at 202. Here, the waiver of the FLSA right to a judicial forum is prospective in nature and should not be enforced. The waiver in this case occurred before any FLSA dispute occurred and as such, the Plaintiff could not make a knowing and informed choice under the FLSA as to whether the waiver was proper. The binding nature of the arbitration makes it even more improper at the pre-dispute stage.

### 6. THE DISTRICT COURT LACKED JURISDICTION TO COMPEL ARBITRATION UNDER THE FAA – SECTION 1 OF THE FAA SPECIFICALLY EXCLUDES DELIVERY/TRANSPORTATION WORKERS LIKE PLAINTIFF

Very significantly, the purported arbitration agreement states in relevant part as follows (A29, ¶ 7.4):

> The Parties agree that the enforceability of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. 2), and acknowledge that Company's business and the nature of Contractor's services involve interstate commerce

However, if the FAA governs, arbitration cannot be compelled in this case under the FAA because Section 1 of the FAA specifically excludes transportation/delivery workers like Plaintiff and states in relevant part as follows (9 U.S.C.A. § 1):

> nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

See also *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001) (holding that § 1 "exempts from the FAA only contracts of employment of transportation workers."). The parties agree that Plaintiff's "services involve interstate commerce," and there is no genuine dispute that Plaintiff was a transportation/delivery worker throughout her employment. After briefing was complete and Defendant's motion to compel was fully submitted and decided, Judge Leonard Wexler in the EDNY decided *Diaz v. Michigan Logistics Inc.*, -F.Supp.3d-, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016). (ECF No. 20 – March 4, 2016). That decision dealt with workers who performed the same type of work that Plaintiff here performed for Defendant – delivery and transportation of a variety of items from stores to customers.

Noting the difficulty of resolving the fact-intensive inquiry as to whether plaintiffs were independent contractors or employees – the same issue in this case, especially based on the limited record at the pre-answer stage, the court in *Diaz* assumed while strongly suggesting that the Section 1 of the FAA exempted and did not require arbitration of the plaintiffs' claims in that case. Because Plaintiff here did

41

the same type of work for Defendant here as the plaintiffs in *Diaz*, this Court should also conclude that Section 1 of the FAA exempts and does not require arbitration of Plaintiff's claims in the action. In any event, the independent contractor issue cannot be resolved at this stage without further discovery as the court in *Diaz* pointed out.

While the Court in *Diaz* relied on New York law as an alternative ground for compelling arbitration in that case, such an approach is legally erroneous for several reasons. First, the parties agreed that the FAA would govern their arbitration agreement and not state law or any other law. That Section 1 of the FAA contains an exclusion is no reason to rewrite the agreement.

Second, state laws regulating arbitration contracts dealing with interstate commerce have been preempted by the FAA. *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). Here, the FAA preempts New York arbitration law, and the FAA specifically exempts from arbitration, the claims of interstate transportation workers like Plaintiff. Unlike agreements to arbitrate other types of claims, the FAA sets forth an exclusion and policy not favoring arbitration of claims of workers like Plaintiff.

Third, the authority of federal judges to compel arbitration comes from the FAA – the NY CPLR (Article 75) which authorize state judges to compel arbitration does not apply in federal court where there is an equivalent federal law such as the FAA. See *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (allowing class action where class can be certified under federal law

42

(FRCP Rule 23) but not under state equivalent of federal law (NY CPLR 901 et

seq.)).

Fourth, NY arbitration law is not concerned with federal claims such as the

FLSA claims in this action, and as such, cannot be said to favor or require arbitration

of such claims especially when they are filed in federal court, and involve a federal

law and "uniquely protective statute," such as the FLSA.

## 7. THE DISTRICT COURT'S RELIANCE ON CERTAIN CASES IS MISPLACED

The district court noted that several district courts within the Second Circuit

have found individual FLSA claims to be arbitrable. (A12-A15). However, these

cases suffer from the same fatal flaws as the district court's decisions in this case.

First, most of these cases do not address the binding Supreme Court precedent in

*Barrentine* and its reasoning, or the many arguments made by Plaintiff herein.

Second, none of these cases address the Second Circuit's decision in *Cheeks* and the

interplay between *Cheeks* and *Barrentine*. In fact, most of these cases were decided

before *Cheeks* was handed down on August 7, 2015. Third, all of the subject cases

relied on the FAA which does not apply in this case. In any event, the holding in

*Barrentine* applied with equal or greater force outside the union context as explained

above. Fourth, the district court did not cite any case from the Second Circuit or the

Supreme Court (binding decisions) which squarely addressed the issues presented

herein. *Barrentine* is the only Supreme Court decision addressing arbitration under the FLSA and in *Barrentine*, the Supreme Court rejected arbitration.

The Court should be aware that because the FAA allows for immediate appeals of orders denying arbitration, but not of orders compelling arbitration, erroneous decisions compelling arbitration go uncorrected and tend to multiply and expand to the detriment of the jurisprudence in this area.

## A. CIAGO AND RELATED CASES

Likely recognizing that cases that did not address *Barrentine* are of little or no value, the district court included in it's a decision, a very lengthy excerpt from *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003), which addressed *Barrentine*. We will therefore explain why the district court's reliance on *Ciago* is grossly misplaced. The District Court in *Ciago* made at least two critical errors which were not addressed or corrected by the district court or by Defendant in this case. First, is the conclusion in *Ciago* that "[B]ecause of the similar remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, the reasoning in *Gilmer* dictates that claims under the FLSA may also be subject to compulsory arbitration provisions." However, the remedial purpose of the ADEA and the FLSA are materially different as set forth above. In essence, the Second Circuit in *Cheeks*, held that the FLSA is a "uniquely protective statute" and that unlike almost every other statute such as the ADEA and Title VII, FLSA rights cannot be waived or resolved by private agreement even where the employee is represented by counsel –

44

judicial or U.S. DOL approval is required. The court in *Ciago* did not have the benefit

of *Cheeks* but we do.

     Second, is the holding in *Ciago* that there isn't "anything in the text of the

FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA

claims." The Court in *Barrentine* did interpret the text of the FLSA at 29 USC §

216(b) as making FLSA claims nonarbitrable. See *Barrentine* 450 U.S. at 740, ("no

other forum for enforcement of statutory rights is referred to or created by the

statute."). Notably, when reading a statute through the lens of the FLSA, its

legislative history and remedial purpose, a court may interpret it differently than if it

was reading such text through the lens of another statute such as the ADEA. See also

*Brooklyn Sav. Bank*, 324 U.S. at 713 ("issues arising under other acts having different

legislative backgrounds are not conclusive in determining the legislative intent with

respect to the Fair Labor Standards Act.").

     In any event, even if the intent of Congress is not discernable from the text of

the FLSA, the relevant intent does not have to be explicit in the text of the statute –

such intent can come from the legislative history and purpose of the statute. In this

regard, the Supreme Court in *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220

(1987), stated in relevant part as follows:

> If Congress did intend to limit or prohibit waiver of a judicial forum for
> a particular claim, such an intent "will be deducible from [the statute's]
> text or legislative history," ibid., or from an inherent conflict between
> arbitration and the statute's underlying purposes. See Id., at 632-637, 105

S.Ct., at 3356-3359; Dean Witter Reynolds Inc. v. Byrd, 470 U.S., at 217, 105 S.Ct., at 1240.

… an intention discernible from the text, history, or purposes of the statute.

See also *Gilmer* 500 U.S. at 26. In *Barrentine*, 450 U.S. at 745, the Supreme Court rejected arbitration in favor of a judicial forum because it concluded that, "Congress ***intended*** to give individual employees the right to bring their minimum wage claims under the FLSA in court." See also *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 850 (2d Cir. 1987) (interpreting *Barrentine* as "finding congressional intent that Fair Labor Standards Act of 1938 claims be nonarbitrable because of conflict between arbitration and FLSA's purposes.").

### B. SECOND CIRCUIT'S DECISION IN SUTHERLAND v. ERNST & YOUNG

The district court also cited to *Sutherland v. Ernst & Young LLP,* 726 F.3d 290, 292 (2d Cir. 2013), while at the same time concluding that because of the costs of arbitration in this case, "plaintiff would be forced out of the game by fear of a financial cost that her opponent could easily absorb" (A118), and that such costs are therefore unconscionable. At the outset, *Sutherland* was based on interpretation of the FAA but the FAA does not apply in this case as explained above under the numerous exclusions and exemptions.

Second, the district court does not seem to disagree that the Second Circuit in *Sutherland* did not address the issue presented here – whether individual FLSA

claims are arbitrable. See also *Rodriguez-Depena v. Parts Authority, Inc.,* 15-cv-06463-ENV, ECF No. 18, pg. 4 (citing *Sutherland* but noting that "the Second Circuit has not explicitly ruled on this issue." In *Sutherland,* 726 F.3d at 292 (2d Cir. 2013), the Second Circuit addressed the issue of class action waivers in FLSA cases and stated in relevant part as follows:

> The question presented in this appeal is whether an employee can invalidate a class-action waiver provision in an arbitration agreement when that waiver removes the financial incentive for her to pursue a claim under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

At most, the Second Circuit in *Sutherland,* assumed but did not decide whether individual FLSA claims are subject to arbitration – assuming but not deciding is a tool often utilized by courts. See e.g. *Riley v. MEBA Pension Trust*, 586 F.2d 968, 970 (2d Cir. 1978) ("We did not Decide on the first appeal that a member of a pension plan who had taken early retirement was entitled to the protection of s 203 of ERISA with respect to forfeitability; we simply Assumed this since no one had argued otherwise."). *United States v. Comstock*, 560 U.S. 126, 133 (2010) ("In resolving that question, we assume, but we do not decide, that other provisions of the Constitution—such as the Due Process Clause—do not prohibit civil commitment in these circumstances."). It is also highly unlikely that a three-judge panel of this Court would address the issue of arbitrability of individual FLSA claims without even addressing the only Supreme Court case on the issue (*Barrentine*), or the earlier Supreme Court decisions in *Brooklyn Savings* and *Gangi*, which deal with the waiver

47

of FLSA rights. Sutherland also did not address the numerous arguments made by Plaintiff herein – the arguments in *Sutherland* centered around the NLRA.

Third, while *Sutherland* held that collective action rights under the FLSA can be waived without violating the NLRA, *Sutherland* did not deal with or address the conditions or requirements for the validity or enforcement of such a waiver. In other words, under *Cheeks*, *Gangi*, and *Brooklyn Savings*, this Court can find that even if FLSA collective action rights can be waived, such a waiver would be unenforceable and invalid, if the waiver was obtained pre-dispute or if the employee was not represented by counsel at the time of the waiver, of if the waiver was not clear and unmistakable - because of the inherent inequality of bargaining power that was the basis for the decisions in *Cheeks*, *Gangi*, and *Brooklyn Savings*.

Fourth, Sutherland is also inapplicable because of intervening changes in the law. Specifically, almost two years after *Sutherland*, the Second Circuit issued its landmark decision in *Cheeks*. In *Cheeks*, 796 F.3d at 207, the Second Circuit found that the FLSA "was a uniquely protective statute," and that waiver of FLSA rights must be judicially or U.S. DOL approved. *Cheeks* destroys the foundation of *Sutherland* by making it clear that FLSA rights are unique and not like rights under other statutes such as the anti-trust statutes. See e.g. *Caserta* 273 F.2d at 946 (2d Cir. 1959) ("this case lies in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy."). See also *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (out of court settlement

48

releases not a bar to bringing of subsequent FLSA claim though it would likely be a bar to claims under other laws.). In this regard, *Sutherland* was based almost entirely on a Supreme Court decision involving anti-trust claims but not FLSA claims. See *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 292 (2d Cir. 2013) ("In light of the supervening decision of the Supreme Court in *American Express Co. v. Italian Colors Restaurant*, ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), we answer that question in the negative, and reverse..."). By contrast, *Cheeks* is based on Supreme Court decisions in Brooklyn Savings, *Gangi,* and *Barrentine*, dealing specifically with the waiver of FLSA rights – the issue in this case. In other words, as the Supreme Court made clear in *Barrentine*, arbitration is improper under the FLSA because FLSA claims "might be lost" if subjected to arbitration, among other reasons – even if this is not a sufficient reason for invalidating arbitration under other statutes such as the anti-trust statutes in *American Express*.

## 8. THE PARTIES DID NOT AGREE TO ARBITRATE IN THE FIRST PLACE

The standard on a motion to compel, is akin to the summary judgment standard and issues of fact require a trial after proper discovery. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Here, the purported arbitration contract in the record was not signed by Defendant. (A31). As such, there was no meeting of the minds or agreement to arbitrate between the parties – at minimum, this is a material issue of fact that requires more discovery and trial. Also, Defendant inserted what

49

appears to be a material false statement into the purported arbitration agreement, that it was "following the full opportunity to discuss and negotiate over this dispute resolution procedure." (A29, ¶ 7.1). As such, Defendants representations as to the making of the arbitration agreement cannot be accepted at face value - discovery and trial are warranted on the issue of arbitration. Relatedly, there are serious questions about the entire alleged electronic signature/agreement process. We do not have enough reliable information to determine if the relevant electronic signature laws were complied with, and there is no testimony or discovery from the HelloSign service that was alleged used. These concerns are more profound, where, as here, Defendant did not sign the agreement, and the agreement erroneously states that it was the result of negotiations.

Especially in these circumstances, and because the FLSA is a "uniquely protective statute," there was no valid and knowing waiver of the FLSA right to a judicial forum, because any such alleged waiver was not specific, clear and unmistakable. Here, the purported waiver does not even mention the FLSA. (A29).

## VI. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Honorable

Court: 1) vacate the district court's orders (2/12/2016 and 9/19/2016), and judgment

(9/19/2016); 2) allow Plaintiff to pursue and litigate her case and claims in the district

court where they were filed, instead of in arbitration; and 3) grant Plaintiff such other,

further and different relief in Plaintiff's favor as this Court deems just and proper.


Dated: Queens Village, New York
      January 9, 2017

                    Respectfully submitted,

                    Abdul Hassan Law Group, PLLC

                    __ /s/ Abdul Hassan_____
                    By: Abdul K. Hassan, Esq. (AH6510)
                    *Counsel for Plaintiff-Appellant Melody Bynum*
                    215-28 Hillside Avenue
                    Queens Village, NY 11427
                    Tel: 718-740-1000
                    Fax: 718-740-2000
                    Email: abdul@abdulhassan.com

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 12,844 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: January 9, 2017

_____/s/  Abdul Hassan_____
Abdul K. Hassan, Esq.

*db*