# No: 16-3348

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

MELODY BYNUM,

Plaintiff-Appellant,

v.

MAPLEBEAR, INC. d/b/a INSTACART,

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (Brooklyn)
Action No. 15-cv-06263-JBW-CLP

---

**DEFENDANT-APPELLEE'S RESPONSIVE BRIEF**

---

Benjamin W. Berkowitz
Nikki K. Vo
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Alice K. Jump
REAVIS PARENT LEHRER LLP
41 Madison Avenue, 41st Floor
New York, NY 10010
Telephone: (212) 763-4100
Facsimile: (212) 763-4141

Counsel for Respondent
MAPLEBEAR, INC. d/b/a INSTACART

## <u>Rule 26.1 Corporate Disclosure Statement</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant

Maplebear, Inc. dba Instacart ("Instacart") discloses that it has no parent company

and that no publicly held corporation owns 10% or more of Instacart's stock.

# **Table of Contents**

Page

I.      INTRODUCTION ......................................................................2

II.     ISSUES PRESENTED FOR REVIEW .......................................4

III.    STATEMENT OF CASE .........................................................4

   A.   Factual Background..........................................................4

      1.   Instacart ....................................................................4

      2.   Bynum entered into an Independent Contractor Agreement with
Instacart. ...................................................................5

      3.   Bynum agreed to submit all disputes arising out of or relating to her
Personal Shopper services and the Independent Contractor Agreement to
binding arbitration. ..................................................8

      4.   Each cause of action alleged in Bynum's Complaint arises out of or
relates to her Personal Shopper services and is therefore subject to the
arbitration provision. ...............................................9

   B.   The District Court Proceedings ....................................11

   C.   This Court's Dismissal of the First *Bynum* Appeal.....................12

   D.   Bynum's Voluntary Dismissal of Her Claims ............13

IV.     SUMMARY OF ARGUMENT....................................................14

V.    ARGUMENT ...................................................................................16

  A.   Because Bynum voluntarily dismissed her case pursuant to Fed. R. Civ. Pro. 41, her appeal must be dismissed and the district court's orders affirmed. .....................................................................................16

  B.   It is well settled that FLSA claims are arbitrable. .......................................19

  C.   The remaining issues raised in Bynum's Opening Brief have been waived because they were never raised to the district court....................................25

    1.   Bynum does not fall within the "transportation worker" exemption to the FAA. ....................................................................................................26

    2.   The pre-dispute arbitration agreement does not impermissibly waive Bynum's FLSA rights. ..........................................................................30

    3.   The Parties agreed to arbitration. ..........................................................34

VI.   CONCLUSION...............................................................................37

iii

# Table of Authorities

Page(s)

## Federal Cases

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*
634 F.3d 112 (2d Cir. 2011) ..................................................... 36

*Adkins v. Labor Ready, Inc.*
303 F.3d 496 (4th Cir. 2002) ................................................... 20

*Askins v. Doe No. 1*
727 F.3d 248 (2d Cir. 2013) ............................................... *passim*

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ......................................................... 21, 34

*Bailey v. Ameriquest Mortgage Co.*
346 F.3d 821 (8th Cir. 2003) ................................................... 20

*Barrentine v. Arkansas-Best Freight System, Inc.*
450 U.S. 728 (1981) ............................................... 20, 21, 22, 23

*Booth v. Montgomery Ward & Co.*
44 F. Supp. 451 (D. Neb. 1942) ................................................ 23

*Bouzzi v. F & J Pine Restaurant, LLC*
841 F. Supp. 2d 635 (E.D.N.Y. 2012) ......................................... 24

*Brooklyn Sav. Bank v. O'Neil*
324 U.S. 697 (1945) ............................................................. 33

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006) ............................................................. 32

*Bynum v. Maplebear Inc., d/b/a Instacart*
No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Dec. 15, 2015),
ECF No. 10 .................................................................. 11, 12

iv

*Bynum v. Maplebear Inc., d/b/a Instacart*
  No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Dec. 15, 2015),
  ECF No. 61 ................................................................................ 12

*Bynum v. Maplebear Inc., d/b/a Instacart*
  No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Feb. 29, 2016),
  ECF No. 38 ................................................................................ 13

*Bynum v. Maplebear Inc., d/b/a Instacart*
  No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Jan. 5, 2016),
  ECF No. 29 ........................................................... 11, 26, 30, 32

*Caley v. Gulfstream Aerospace Corp.*
  428 F.3d 1359 (11th Cir. 2005) ............................................... 20

*Camesi v. Univ. of Pittsburgh Med. Ctr.*
  729 F.3d 239 (3d Cir. 2013)............................................... 17, 18

*Carter v. Countrywide Credit Industries, Inc.*
  362 F.3d 294 (5th Cir. 2004)................................................... 20

*Caserta v. Home Lines Agency, Inc.*
  273 F.2d 943 (2d Cir. 1959)................................................... 33

*Cheeks v. Freeport Pancake House, Inc.*
  796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016)
  ................................................................... 23, 26, 30, 33, 34

*Circuit City Stores, Inc. v. Adams*
  532 U.S. 105 (2001) ................................................... 15, 27, 28

*Cotton v. Slone*
  4 F.3d 176 (2d Cir. 1993)....................................................... 18

*D.A. Schulte, Inc., v. Gangi*
  328 U.S. 108 (1946)............................................................... 33

*Dees v. Hydradry, Inc.*
  706 F. Supp.2d 1227 (M.D. Fla. 2010)................................... 24

*Diaz v. Michigan Logistics Inc.*
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ............................... 29, 30

v

*Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.*
  814 F.2d 90 (2d Cir. 1987)................................................. 2, 14, 16, 17, 19

*Fredman v. Foley Bros.*
  50 F. Supp. 161 (W.D. Mo. 1943) ............................................. 23

*Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*
  815 F.2d 840 (2d Cir. 1987)....................................................... 22, 35, 36

*Gilmer v. Interstate/Johnson Lane Corp.*
  500 U.S. 20 (1991) ........................................................ 19, 20, 31, 32, 33

*Green Tree Fin. Corp.-Ala. v. Randolph*
  531 U.S. 79 (2000) ............................................................. 18

*Hill v. Rent-A-Center, Inc.*
  398 F.3d 1286 (11th Cir. 2005) ............................................. 29

*Horenstein v. Mortgage Market, Inc.*
  9 Fed. App'x. 618 (9th Cir. 2001) ......................................... 20

*International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast,*
  *LLC* 702 F.3d 954 (7th Cir. 2012) ......................................... 29

*Katz v. Cellco P'ship*
  794 F.3d 341 (2d Cir. 2015)............................................... 18, 25

*Kowaleski v. Samandarov*
  590 F. Supp. 2d 477 (S.D.N.Y. 2008)..................................... 29

*Moreno v. Nassau Country Club*
  No. 12-cv-5324, 2013 WL 5788730 (E.D.N.Y. 2013) ............................ 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983) ............................................................. 18

*Shearson/Am. Exp., Inc. v. McMahon*
  482 U.S. 220 (1987)....................................................... 21, 22

*Sierra Rutile Ltd. v. Katz*
  937 F.2d 743 (2d Cir. 1991)................................................ 18

vi

*Skirchak v. Dynamics Research Corp.*
    508 F.3d 49 (1st Cir. 2007) ...................................................... 20

*Steginsky v. Xcelera Inc.*
    658 F. App'x 5 (2d Cir. 2016) ................................................ 14, 16, 17, 19

*Sutherland v. Ernst & Young LLP*
    726 F.3d 290 (2d Cir. 2013).................................................. 3, 15, 19, 31, 34

*Tran v. Tran*
    54 F.3d 115 (2d Cir. 1995)................................................... 22, 23

*Vilches v. The Travelers Companies, Inc.*
    413 Fed. App'x. 487 (3d Cir. 2011)........................................ 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005)................................................... 3, 4, 15, 25, 26

## State Cases

*Serafin v. Balco Properties Ltd. LLC*
    235 Cal. App. 4th 165 (2015) ................................................ 36

## Federal Statutes

9 U.S.C. § 1 .............................................................................*passim*

9 U.S.C. § 2 ........................................................................... 28

9 U.S.C. § 16(b)(1)-(2)........................................................... 17

15 U.S.C. § 7001 (a)(1) ........................................................... 35

28 U.S.C. § 1291 .................................................................... 17

28 U.S.C. § 1292(b) ............................................................... 13

29 U.S.C. § 215(a)(3)............................................................. 34

29 U.S.C. § 216(b) ................................................................. 34

Age Discrimination in Employment Act ..................................... 33

Fair Labor Standards Act ....................................................*passim*

Federal Arbitration Act ................................................................. 22

U.S. Electronic Signature in Global and National Commerce Act of 2000
.......................................................................................... 6, 7, 8, 35

**State Statutes**

New York Labor Law ............................................................. 10, 34

**Federal Rules**

Fed. R. Civ. Pro. 41 ............................................................. 2, 14, 16

**JAMS Rules**

Rule 21 ............................................................................... 24

Rule 26 ............................................................................... 24

Rule 31(a) ........................................................................... 22

viii

# I.    INTRODUCTION

This appeal arises from Plaintiff-Appellant Melody Bynum's ("Appellant" or "Bynum") knowing and voluntary dismissal of her claims against Defendant-Appellee Maplebear, Inc. d/b/a Instacart ("Appellee" or "Instacart") and the district court's entry of judgment in favor of Instacart pursuant to Federal Rule of Civil Procedure 41(a)(2).  To ensure that her decision to dismiss her claims was knowing and voluntary, the district court examined Bynum in person and under oath in open court about her decision:

> **THE COURT:** The only thing that worries me about a dismissal on the merits is whether this attorney [Bynum's counsel] has acted ethically, I don't say you haven't, by putting the client's possible claim at risk for a decision on the merits, and whether, as an ethical and as a procedural question, this practice should be permitted. But the client is sitting right here next to him and she says -- you don't want to go forward with the case, right?
>
> **PLAINTIFF BYNUM:** Correct. Yes.

A211.

On this record, there can be no dispute that Bynum voluntarily and knowingly dismissed her claims.  Having done so, Bynum cannot avoid "the general rule that an appeal from a judgment entered upon a voluntary dismissal with prejudice does not bring up for review any matters that were voluntarily dismissed." *Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90, 94 (2d Cir. 1987).  Accordingly, because this appeal arises from claims that

Bynum voluntarily dismissed, the appeal is improper and the district court's orders must be affirmed.

Yet, even if Bynum could appeal the pre-dismissal interlocutory orders of the district court, her appeal fails as to those, as well. The only issue identified in her opening brief that was properly raised at the district court is the question of whether claims under the Fair Labor Standards Act ("FLSA") are arbitrable. That question is squarely answered by well-established precedent. In *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 294-95 (2d Cir. 2013), the Second Circuit compelled individual arbitration of FLSA claims and specifically rejected the plaintiff's argument (similar to Bynum's argument here) that enforcing the arbitration provision in her employment contract would prevent her from "effectively vindicating" her rights under the FLSA. *Id.* Bynum has not identified a case holding otherwise.

Each of the remaining issues identified in Bynum's opening brief has been waived by Bynum, not only because she has voluntarily dismissed her case, but also because she neither raised nor litigated those issues at the district court. *See Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013) (("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (citation omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a

3

party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal.") (citation omitted). Accordingly, these issues have been waived and Bynum may not address these arguments on appeal. Nonetheless, even if considered, each of her new arguments is meritless and fails to disturb the district court's orders.

For all of these reasons and more stated below, Instacart respectfully submits that the district court's orders should be affirmed in their entirety.

## II. ISSUES PRESENTED FOR REVIEW

**ISSUE 1:** Whether a party can appeal a case it voluntarily dismissed with prejudice?

**ISSUE 2:** Whether a party has waived arguments that were available below but not made to the district court?[1]

**ISSUE 3**: Whether individual FLSA claims are arbitrable?

## III. STATEMENT OF CASE

### A. Factual Background

#### 1. Instacart

Instacart is a technology company headquartered in San Francisco, California. A20. Instacart uses a proprietary software platform, including a

---

[1] As discussed in more detail below, Issues 2, 3 and 4 that Bynum identifies in her opening appellant brief have been waived because Bynum did not make these arguments to the district court. *See Askins*, 727 F.3d at 252; *Wal-Mart Stores, Inc.*, 396 F.3d at 124 n.29.

4

mobile "app," to facilitate fast and on-demand grocery delivery services in major metropolitan areas across the country, including New York City. *Id.*

Instacart customers who wish to purchase grocery-type items need only create an account with Instacart via the Instacart website or app, and place an order for those items. A21. Once a customer places an order, Instacart's proprietary communications and logistics technology connects that customer with an available Personal Shopper who is likely to complete the order. *Id.*

### 2. Bynum entered into an Independent Contractor Agreement with Instacart.

On October 15, 2014, Bynum entered into an Independent Contractor Agreement with Instacart in order to perform services as a Personal Shopper (the "IC Agreement"). A21-23; A24-45. To do so, she applied via the Instacart website. A21-22. Since Instacart first launched services in New York City in March 2014, the Instacart website has included a link on its front page that says "Become a Shopper." A21. Clicking on that link takes the person to a dedicated Personal Shopper application portion of the website, which describes the tasks that a Personal Shopper may be contracted to perform, the qualifications to enter into a contract as a Personal Shopper, an overview of the application process, and an "Apply Now!" link to start the application process. *Id.* As part of the application

5

process, Bynum was required to review and sign the IC Agreement with Instacart. A21-23; A24-45.

To manage its Independent Contractor Agreements with Personal Shoppers, Instacart uses an electronic signature service called HelloSign. A22. HelloSign maintains a time-stamped audit trail that tracks when each Personal Shopper applicant receives, views, and executes an Independent Contractor Agreement— using IP addresses and other identifying data. *Id.* It also enables an applicant, after being properly authenticated through various security measures, to electronically sign and affix his or her signature to the agreement without printing it out. *Id.* HelloSign's Legality Statement represents that it complies with the U.S. Electronic Signature in Global and National Commerce Act of 2000 (E-SIGN) regarding electronic signatures and transmissions, thereby making the signatures valid and legally binding. *Id.*

Using HelloSign, Bynum reviewed and signed the IC Agreement with Instacart on October 15, 2014. A21-22; A24-45. That IC Agreement is and was intended to be valid and legally binding between Bynum and Instacart. *See, e.g.*, A26 (the agreement "is made effective as of 10/15/2014 by and between Maplebear, Inc., doing business as Instacart ('Company'), and Melody Bynum, an individual ('Contractor')."). According to HelloSign's audit data, Bynum reviewed her IC Agreement on three separate occasions before signing it—on

6

October 9, 14, and 15, 2014. A45 (HelloSign audit trail information). There was no time limit for Bynum to review and sign the IC Agreement. A22. At the completion of the application process, Bynum received a copy of her application materials, including her signed IC Agreement. A23. A copy of Bynum's IC Agreement, as well as the corresponding HelloSign audit information, is a part of the record that was submitted to the district court. A21-23; A24-45. During the evidentiary hearing on Instacart's motion to compel arbitration, Bynum affirmed that she had signed the IC Agreement in response to questioning from the district court. A84.

After Bynum accepted the terms of her IC Agreement and completed other paperwork and training as part of the application process, she and Instacart performed their respective obligations under the IC Agreement. Bynum started using the Instacart Platform as a Personal Shopper on or around October 13, 2014. A23. For its part, Instacart granted Bynum access to its communications platform and paid out funds to her per the terms in her IC Agreement. *Id.* Accordingly, after Bynum reviewed and signed her IC Agreement, she and Instacart indicated their mutual assent to the agreement by performing under its terms.

7

**3.      Bynum agreed to submit all disputes arising out of or relating to her Personal Shopper services and the Independent Contractor Agreement to binding arbitration.**

Bynum's IC Agreement contains a section entitled "**DISPUTE RESOLUTION**" in bold and capitalized letters.  A22-23; A29-30.  Section 7.1 states:

> 7.1      Following the full opportunity to discuss and negotiate over this dispute resolution procedure, *the Parties agree that* to the fullest extent permitted by law, *any controversy, dispute or claim arising out of or relating to the Services performed by the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement*, or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), *shall be submitted to and determined exclusively by binding arbitration*.  The Parties agree that a Dispute arising under any law that requires resort to an administrative agency may be brought before such agency as permitted by law, and that after exhaustion of administrative remedies, the Parties must pursue such Dispute through this binding arbitration procedure to the fullest extent permitted by law.

A29 (emphasis added).

Section 7.2 of the Independent Contract Agreement further provides that the arbitration shall be administered by JAMS "pursuant to its Employment Arbitration Rules and Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness (collectively, 'Rules') that are in effect when arbitration is demanded." *Id.*  The JAMS Rules are attached as Exhibit B to the IC Agreement, and the website address to JAMS is also provided.

8

A33-35.  The JAMS Rules afford additional protections to ensure fairness for both

contracting parties.  In Section 7.3, the IC Agreement provides for reasonable and

sufficient discovery procedures and a full presentation of evidence, and each

agreement requires "the arbitrator [to] submit a decision in writing, specifying the

findings of fact and the conclusions of law on which the decision is based."  A29.

Finally, Section 7.4 of Bynum's IC Agreement states:

> 7.4    The Parties agree that the enforceability of this Agreement shall
> be governed by the Federal Arbitration Act (9 U.S.C. § 2), and
> acknowledge that Company's business and the nature of Contractor's
> services involve interstate commerce.  The arbitrator shall apply
> California substantive law to the proceeding, except for any claim to
> which Federal substantive law would apply.  **The Parties each
> expressly waive the right to a jury trial and agree that the
> arbitrator's award shall be final and binding on the Parties**.  Any
> action to review the arbitration award for legal error or to have it
> confirmed, corrected or vacated shall be decided pursuant to
> California law and shall be filed and maintained in a California state
> court of competent jurisdiction.

A29-30 (emphasis in original).  The record is clear, therefore, that, pursuant to the

express terms of her IC Agreement, Bynum agreed to arbitrate her claim.

### 4.    Each cause of action alleged in Bynum's Complaint arises out of or relates to her Personal Shopper services and is therefore subject to the arbitration provision.

Each of Bynum's alleged causes of action arises out of or relates to her

services as a Personal Shopper.  In particular, she alleges that she was contracted

by Instacart to "do delivery work," and that she "lifted and transported packages

9

for delivery all throughout her work day and she performed the physical and manual task of operating a motor vehicle through the day to do the deliveries for defendant." A9-11. Bynum then alleges that "[a]t all times relevant herein, [Instacart] misclassified [her] as a non-employee, and as a result, defendant did not pay [her] overtime wages of at least 1.5 times her regular rate as required by the FLSA and NYLL." A11. According to Bynum, Instacart exerted control over her in a manner consistent with an employer-employee relationship, including but not limited to directing and instructing her "as to what work to do and how to do such work," setting her "work schedule and work hours," requiring her to "wear an identification badge around her neck while working," and requiring her to "represent herself as an employee of defendant." A10.

Based on the above allegations, Bynum alleges four separate causes of action against Instacart: declaratory judgment, alleged violation of the FLSA, and two alleged violations of the New York Labor Law ("NYLL"). In addition to requesting that the Court declare that "she was an employee" of Instacart pursuant to the FLSA, as well as the NYLL, A13, Bynum requests reimbursement of all allegedly unpaid wages, "including her unpaid non-overtime and overtime wages," and "reimbursement for unlawful deductions," in addition to liquidated damages, prejudgment interest, and attorney's fees to the extent recoverable. A16. Because the claims alleged in Bynum's Complaint arise out of and relate to her Personal

10

Shopper services, her claims are governed by the arbitration provision of the IC Agreement.

## B.    The District Court Proceedings

Despite the parties' written agreement to arbitrate, Bynum filed this lawsuit in the United States District Court for the Eastern District of New York on October 30, 2015.  A8-17.  On December 15, 2015, Instacart moved to compel arbitration.  A3; Notice of Mot. of Def. Maplebear Inc., d/b/a Instacart to Compel Arbitration and to Dismiss the Compl. or Stay the Litigation, *Bynum v. Maplebear Inc., d/b/a Instacart*, No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Dec. 15, 2015), ECF No. 10.  Bynum opposed Instacart's motion on January 5, 2016.  A4. Bynum's Opposition stated the following grounds:  (1) Congress intended the FLSA claims to be nonarbitrable; and (2) more information and discovery is needed to determine whether an arbitration agreement exists and is valid.  Pls.'s Mem. of Law In Opp'n to Def.'s Mot. to Compel Arbitration, *Bynum v. Maplebear Inc., d/b/a Instacart*,  No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Jan. 5, 2016), ECF No. 29 (the "Opposition").  Judge Weinstein, to whom the case was assigned, held an evidentiary hearing on Instacart's motion to compel arbitration on February 8, 2016.  A81-102.  At the hearing, the parties stipulated that the venue provision in the IC Agreement's arbitration clause was severable and that venue for Bynum's claims was properly in New York.  A85-86.  The parties also stipulated that

11

Instacart would pay the arbitrator's fees—thereby striking the IC Agreement's fee splitting provision as well as the prevailing party provision. A88.

On February 12, 2016, the district court granted Instacart's motion to compel arbitration and ordered the parties to submit their dispute to arbitration. A126. In its Order, the district court rejected Bynum's argument that her FLSA claims were non-arbitrable, observing that "[r]epeatedly it has been found that individual agreements to arbitrate FLSA claims are enforceable." A122. The court further held that a valid arbitration agreement existed between the parties, and Bynum's claims "fall within the scope of the arbitration agreement." A116-17; A125-26. The district court then stayed the federal court litigation pending the outcome of the arbitration and directed Instacart to file an arbitration demand with JAMS in New York. A126. Instacart filed the arbitration demand with JAMS on February 16, 2016. A7; *Bynum v. Maplebear Inc., d/b/a Instacart*, No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Dec. 15, 2015), ECF No. 61.

### C.  This Court's Dismissal of the First *Bynum* Appeal

On February 29, 2016, Bynum's counsel filed a letter with the district court stating that Bynum had "decided to decline arbitration" and to take an appeal "as of right." A128. Bynum asked the district court to "convert" the stay of the case pending arbitration to a "dismissal of the action." *Id.* That same day, Bynum filed a Notice of Appeal with this Court in Case No. 16-548. A5; Notice of Appeal,

12

*Bynum v. Maplebear Inc., d/b/a Instacart*,  No. 1:15-cv-062363-JBW-CLP

(E.D.N.Y. Feb. 29, 2016), ECF No. 38.  On March 1, 2016, Instacart filed a letter

with the district court pointing out the lack of appellate jurisdiction over the district

court's order granting the motion to compel arbitration.  A131-33.  On March 7,

2016, the district court denied Bynum's request to convert the stay into a dismissal

of the action.  A134.

Instacart then moved to dismiss Bynum's first appeal before this Court in

Case No. 16-584, which this Court granted on July 13, 2016 after determining that

it lacked jurisdiction over the appeal given that a final order had not been issued by

the district court.  A139.  This Court directed the district court on remand to

determine "whether the Appellant's waiver of the right to arbitrate entitles the

Appellant to termination of the existing stay and dismissal of the action, and/or

whether certification under 28 U.S.C. § 1292(b) is appropriate."  *Id.*  On

August 18, 2016, Bynum filed with the district court a motion for certification for

appeal pursuant to section 1292(b) and this Court's July 13, 2016 order, or in the

alternative, a ruling that the district court's February 12, 2016 order was final and

appealable in light of Bynum's waiver of arbitration.  A135-36.

### D.  Bynum's Voluntary Dismissal of Her Claims

On September 8, 2016, Judge Weinstein held an evidentiary hearing on

Bynum's August 18, 2016 motion.  A141.  During that hearing, Bynum (who

appeared in person) and her counsel indicated to the district court that they did not intend to proceed with her case and instead were seeking dismissal not only for purposes of arbitration but "for all purposes." A157. The district court also confirmed with Bynum that she understood dismissal on the merits meant that she could not bring her claim again, and Bynum's counsel confirmed he had advised her "in great detail" on that point. A145. Under the circumstances, the district court held dismissal was proper under Federal Rule of Civil Procedure 41(a)(2). A214. The district court also denied Bynum's request for appellate certification under Section 1292. A216.

Bynum filed a notice of appeal on September 29, 2016, A218, and filed her appellant opening brief on January 9, 2017 (the "Appellant Brief").

## IV. SUMMARY OF ARGUMENT

Bynum cannot avoid "the general rule that an appeal from a judgment entered upon a voluntary dismissal with prejudice does not bring up for review any matters that were voluntarily dismissed." *Empire Volkswagen Inc.*, 814 F.2d at 94; *Steginsky v. Xcelera Inc.*, 658 F. App'x 5, 6-7 (2d Cir. 2016) (summary order) ("A plaintiff who seeks and obtains dismissal of a claim is not ordinarily permitted to appeal from the dismissal, since it is presumed that [the] plaintiff[ ] obtained that which [she] sought." (internal citations and quotations omitted)). Accordingly, her appeal should be dismissed.

14

But even if the Court were to consider Bynum's appeal, it only need consider one issue: whether FLSA claims are arbitrable. The remaining issues raised by Bynum on appeal have been waived because none were raised before the district court. Regarding the FLSA issue that that Bynum did raise, there can be no dispute that the district court correctly determined that Bynum's FLSA claims may be compelled to arbitration. It is well-settled that FLSA claims are arbitrable under the FAA. *See Sutherland*, 726 F.3d at 299.

Regarding the remaining issues, out of an abundance of caution, Instacart will address them here even though it is clear that Bynum waived them by failing to raise them with the district court. *See Askins*, 727 F.3d at 252 ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (citation omitted)); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal." (citation omitted)).

Bynum's arguments on each waived issue fail to provide any basis to overturn the order of the district court. First, Bynum has not and cannot establish that she falls within the Section 1 exemption to the FAA because she was not "engaged in" interstate commerce and she was not a "transportation worker" within the meaning of the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S.

15

105 (2001).  Second, none of Bynum's cases support the proposition that the FLSA

prohibits a pre-dispute agreement to arbitrate.  Finally, there can be no dispute that

Instacart and Bynum intended to, and did, enter into a valid arbitration agreement,

that Bynum signed the agreement, and that both Bynum and Instacart performed

under the agreement.

Accordingly, Bynum has not advanced any valid argument for overturning

the district court's decision that the arbitration agreement was valid and

enforceable.  Bynum's appeal should be dismissed and the district court's orders

affirmed.

## V.    ARGUMENT

### A.    Because Bynum voluntarily dismissed her case pursuant to Fed. R. Civ. Pro. 41, her appeal must be dismissed and the district court's orders affirmed.

It is undisputed that Bynum voluntarily dismissed her claims with prejudice.

A214.[2]  As such, Bynum cannot avoid "the general rule that an appeal from a

judgment entered upon a voluntary dismissal with prejudice does not bring up for

review any matters that were voluntarily dismissed." *Empire Volkswagen Inc.*, 814

F.2d at 94; *Steginsky*, 658 F. App'x at 6-7 ("A plaintiff who seeks and obtains

dismissal of a claim is not ordinarily permitted to appeal from the dismissal, since

---

[2] The district court entered judgment pursuant to Federal Rule of Civil Procedure 41(a)(2), which provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

16

it is presumed that [the] plaintiff[ ] obtained that which [she] sought." (internal citations and quotations omitted)).  Accordingly, there is nothing for Bynum to appeal because she obtained that which she sought.

The Third Circuit recently rejected precisely this procedural gambit by another FLSA plaintiff as an attempt to "short-circuit the procedure for appealing an interlocutory district court order that is separate from, and unrelated to, the merits of their case." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 245 (3d Cir. 2013).  In reaching its decision, the court reasoned that allowing an appellant to convert an interlocutory order into a final appealable order through a voluntary dismissal would greatly undermine the policy against piecemeal litigation embodied by 28 U.S.C. § 1291.  *Id.* at 245-46.  The same is true here. Bynum cannot convert an interlocutory order compelling arbitration into a final order by voluntarily dismissing her claims.  To the contrary, because she voluntarily dismissed her claims, there is nothing remaining to be appealed.  *See Empire Volkswagen*, 814 F.2d at 94; *Steginsky*, 658 F. App'x at 6-7.

This *Camesi* decision is consistent with the well-settled rule that, under the FAA, while an interlocutory appeal may be taken as of right from an order *denying* a motion to compel arbitration, no appeal may be taken from an interlocutory order *compelling* arbitration or directing arbitration to proceed.  *See* 9 U.S.C. § 16(b)(1)-(2) ("[A]n appeal may not be taken from an interlocutory order … granting a stay

17

of any action under section 3 … [or] directing arbitration to proceed under section 4."); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) ("§ 16 generally permits immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeal of interlocutory orders favorable to arbitration."); *Cotton v. Slone,* 4 F.3d 176, 180 (2d Cir. 1993) (observing that the FAA "explicitly permits immediate appeals from orders giving litigation precedence over arbitration but forbids immediate appeals from orders favoring arbitration." (bracket and citation omitted)); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 748 (2d Cir. 1991) (same); *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (observing that the FAA "permits immediate appeal of orders hostile to arbitration … but bars appeal of interlocutory orders favorable to arbitration."). This Court's holdings are consistent with the FAA's policy favoring arbitration agreements and its goal to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983).

Accordingly, this Court should reject Bynum's attempt to "short circuit" the FAA's statutory scheme. *See Camesi*, 729 F.3d at 245. The law is clear that a party cannot obtain a dismissal following the grant of a motion compelling arbitration pursuant to the FAA to "confer appellate rights expressly proscribed by Congress." *Katz*, 794 F.3d at 346. Instead, because Bynum voluntarily dismissed

18

her claims, there is nothing remaining to be appealed.  *See Empire Volkswagen*,

814 F.2d at 94; *Steginsky*, 658 F. App'x at 6-7.  Bynum's appeal must therefore be

dismissed and the district court's orders should be affirmed.

### B.     It is well settled that FLSA claims are arbitrable.

In addition to waiving her appeal by voluntarily dismissing her claims,

Bynum's argument on appeal that FLSA claims are non-arbitrable is wrong as a

matter of law.  The district court correctly held that the "decisions of the Supreme

Court, as well as courts both within and outside this circuit, indicate that valid

arbitration agreements subjecting individual FLSA claims to arbitration must be

enforced in accordance with the FAA."  A124.

A party opposing arbitration on the grounds that her claims are non-

arbitrable bears the burden of proving that Congress intended to preclude a waiver

of a judicial forum for those claims.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500

U.S. 20, 26 (1991).  Bynum has not—and indeed cannot—meet this burden

because the law is well-settled that FLSA claims are arbitrable under the FAA.

This is so because "the FLSA does not include a 'contrary congressional

command' that prevents the underlying arbitration agreement from being enforced

by its terms" pursuant to the FAA.  *Sutherland*, 726 F.3d at 297.  This rule has

been recognized not only by the Second Circuit, but by *seven* other circuit courts of

19

appeals.[3] There is no authority—and Bynum has cited none—to suggest that FLSA claims are non-arbitrable. Bynum, accordingly, has not and cannot meet her burden to establish that the claims here are unsuitable for arbitration. *Gilmer*, 500 U.S. at 26.

In attempting to meet this burden, Bynum relies primarily on *Barrentine v. Arkansas-Best Freight System, Inc*., 450 U.S. 728 (1981). But her reliance on *Barrentine* is misplaced. *Barrentine* involved a question not at issue here: whether a union member can bring FLSA claims in federal court after unsuccessfully submitting a wage claim based on the same underlying facts to a joint grievance committee pursuant to a collective-bargaining agreement ("CBA"). *Id*. at 729-30. In that case, Mr. Barrentine's CBA required him to submit any claim about his employment to a joint grievance committee. The grievance committee in turn could only award compensation specifically authorized by the CBA. *Id*. at 745. In other words, the committee had no authority—and no obligation—to award damages provided by the FLSA but was "confined to interpretation and

---

[3] *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) ("FLSA claims may properly be resolved in mandatory arbitration proceedings"); *Horenstein v. Mortgage Market, Inc.*, 9 Fed. App'x. 618 (9th Cir. 2001) ("[T]here is nothing in the text, and plaintiffs have shown nothing in the legislative history, indicating that Congress intended to preclude arbitration of FLSA claims."); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007) (affirming grant of motion to compel arbitration of FLSA claims); *Vilches v. The Travelers Companies, Inc.*, 413 Fed. App'x. 487 (3d Cir. 2011) (affirming grant of arbitration of FLSA claims); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("Appellants assert here that the text and legislative history of the FLSA explicitly preclude arbitration. As the district court noted, however, there is nothing in the FLSA's text or legislative history supporting this assertion."); *Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821 (8th Cir. 2003) (reversing district court's denial of motion to compel arbitration of FLSA claims); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (affirming district court's grant of employer's motion to compel arbitration of FLSA claims).

application" of the CBA. *Id.* Noting these limitations, the Supreme Court held that while courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the CBA, where the employee's claim is based on rights arising out of a statute such as the FLSA, Mr. Barrentine could bring claims to vindicate such rights directly in federal court despite previously unsuccessfully submitting them to a joint grievance committee. *Id.*

*Barrentine* has no application here. Unlike *Barrentine*, this case involves a private agreement that contains a clear and unequivocal agreement to arbitrate all claims arising out of or relating to Bynum's services as an independent contractor. A29 (IC Agreement at § 7.1). The arbitration would not be conducted pursuant to any collective bargaining agreement but rather pursuant to the FAA. *Id.* (IC Agreement at § 7.4). Under the FAA, a strong presumption in favor of arbitration exists. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (arbitration agreements under the FAA are presumed valid and enforceable). This presumption of validity reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Bynum has not countered this presumption. Further, unlike the situation in *Barrentine*, there is no risk here that Bynum's FLSA claims would be sacrificed as part of a collective bargaining process. To the contrary, Bynum would be entitled to litigate those claims before an arbitrator. Moreover, Bynum's

21

available relief is not limited by any provision of the IC Agreement, which instead provides that the arbitrator "may award any remedy or relief available under applicable law in a court proceeding, including, without limitation, damages, costs, and injunctive relief." A29 (IC Agreement at § 7.3). Accordingly, *Barrentine* has no application to this case.[4]

In addition to *Barrentine*, Bynum also appears to rely on *Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*, 815 F.2d 840 (2d Cir. 1987) and *Tran v. Tran*, 54 F.3d 115 (2d Cir. 1995), for the proposition that FLSA claims are not arbitrable. Neither case supports her argument. *Genesco* does not involve FLSA claims. Instead, the case addressed whether a civil RICO claim was arbitrable. *Genesco*, 815 F.2d at 848. *Tran*, on the other hand, addresses whether a plaintiff was required to exhaust his arbitral remedy under a CBA before bringing his FLSA claims in federal court.

---

[4] Bynum also suggests that the arbitrator will effectuate the intent of the parties rather than enforce the FLSA. Appellant Br. at 29-30. But there is no authority or evidence to suggest the arbitrator would do anything other than award whatever relief would be appropriate under the law—the same that would happen in a judicial proceeding. In an opinion several years after *Barrentine*, the Supreme Court recognized that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [Federal Arbitration Act] in controversies based on statutes." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotations and citations omitted). Bynum's suggestion that there is a "conflict of interest" as a result of an employer paying all of the arbitration fees is similarly baseless. Not only does she provide no support for this argument, but, under JAMS Employment Rules, the arbitrator will not typically know which party is paying the fees. *See e.g.*, A75, JAMS Rule 31(a) ("To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator."). Moreover, given that the parties stipulated that Instacart would pay the fees, A88, Bynum cannot now suggest her own agreement creates an insurmountable conflict.

22

*Tran*, 54 F.3d at 118. Thus, like *Barrentine*, *Tran* does not address whether FLSA claims are arbitrable under the FAA.[5]

Bynum's arguments based on this Court's decision in *Cheeks* fare no better. The district court correctly determined that the *Cheeks* decision "does not bear on the arbitrability of FLSA claims" because "no question regarding the arbitrability of FLSA claims was raised." A125. Indeed, *Cheeks* addressed the separate issue of whether FLSA actions are an exception to the rule that "parties may stipulate to the dismissal of an action without the involvement of the court." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 201 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). In *Cheeks*, this Court held that stipulated dismissals settling FLSA claims required approval of the district court or the Department of Labor. *Id.* Thus, *Cheeks* simply does not speak to the question of whether FLSA claims are arbitrable.

Bynum is also incorrect that the *Cheeks* case holds that "FLSA proceedings cannot be confidential." Appellant Br. at 23. As noted above, *Cheeks* held only that stipulated dismissals settling FLSA claims require approval of the district court or the Department of Labor. 796 F.3d at 201. The case does not—and

---

[5] Bynum also argues that *Booth v. Montgomery Ward & Co.*, 44 F. Supp. 451 (D. Neb. 1942), and *Fredman v. Foley Bros.*, 50 F. Supp. 161 (W.D. Mo. 1943), "confirm the obvious intent of Congress based on the text, purpose and legislative history of the FLSA – that the FLSA will be undermined if the right to a judicial forum is waived, especially where the FLSA wages are small in amount, as is the case here." Appellant Br. at 21. However, neither case addresses the issue of whether FLSA claims are arbitrable but instead relate to the question of whether a FLSA claim is removable to federal court.

cannot be read—to stand for the proposition that FLSA arbitrations may not be confidential or that the inherently more confidential nature of arbitration proceedings precludes arbitration of FLSA claims. None of the other cases cited by Bynum suggests otherwise.[6]

Further, even if Bynum were correct that FLSA litigation could not be confidential, JAMS' Rules do not require that the arbitration proceedings or the award be treated as confidential, and Instacart has not sought to keep them confidential. Bynum's citation to Rule 21 of JAMS' Streamlined Arbitration Rules is also inapposite.[7] This rule imposes an obligation on the Arbitrator and JAMS that they must maintain the confidential nature of the arbitration proceeding. It does not preclude or prohibit the parties from disclosing the nature of the proceeding or its outcome. And indeed, the Rule contemplates that the Arbitrator—as well as the parties—will make necessary disclosures to the extent "required by law." A72-73. Thus, if the law requires the parties to disclose or obtain court approval of the terms of any settlement made during the arbitration

---

[6] Each of the cases Ms. Bynum cites involves the question of whether the parties may keep settlement of their FLSA claims confidential, not whether FLSA arbitration proceedings must be conducted in public. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp.2d 1227 (M.D. Fla. 2010) (rejecting as unreasonable a FLSA settlement that contains a confidentiality provision.); *Moreno v. Nassau Country Club*, No. 12-cv-5324, 2013 WL 5788730 at *2 (E.D.N.Y. 2013) (requiring the parties to make a showing of a "need for the terms of their settlement to contain a confidentiality provision to overcome the factors weighing in favor of public access." (citation omitted)); *Bouzzi v. F & J Pine Restaurant, LLC*, 841 F. Supp. 2d 635 (E.D.N.Y. 2012) (rejecting the parties' motion to seal settlement agreement of FLSA claims).

[7] Although Ms. Bynum incorrectly cites to the inapplicable JAMS' Streamlined Arbitration Rules, the same provision is included in JAMS' Employment Arbitration Rules & Procedures. *See* A72-73 (Rule 26 ("Confidentiality and Privacy")).

proceeding or the arbitration award, the Arbitrator and the parties are permitted by the Rule to do so. Indeed, because the district court had retained jurisdiction even after granting Instacart's motion to compel, it had the authority to address such issues. A126; *see also* A215; *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015) (a stay, rather than dismissal, may be appropriate even when all claims in complaint are compelled to arbitration).

In sum, Bynum's arguments that her FLSA claims are not arbitrable under the FAA are meritless and are no basis for overturning the well-reasoned orders of the district court.

### C. The remaining issues raised in Bynum's Opening Brief have been waived because they were never raised to the district court.

Bynum also advances several other new arguments on appeal that she never raised to the district court. These new arguments are therefore waived. "'[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.'" *Askins*, 727 F.3d at 252 (citation omitted); *Wal-Mart Stores, Inc.*, 396 F.3d at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal." (citation omitted)).

In an abundance of caution, however, Instacart will address the merits of these arguments here. Bynum now raises three new arguments on appeal, namely that: (1) "the district court did not have jurisdiction to compel arbitration under the FAA because transportation / delivery workers like plaintiff are specifically excluded under Section 1 of the FAA"; (2) even if FLSA claims are arbitrable, the pre-dispute arbitration agreement at issue here is unenforceable under *Cheeks* due to "inequality of bargaining power"; and (3) that "there was no meeting of the minds or agreement to arbitrate between the parties." Appellant Br. at 13-14 and 49. Because Bynum never raised these arguments before the district court, they have been waived. *See* Pls.'s Mem. of Law In Opp'n to Def.'s Mot. to Compel Arbitration, *Bynum v. Maplebear Inc., d/b/a Instacart*, No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Jan. 5, 2016), ECF No. 29; *Askins*, 727 F.3d at 252; *Wal-Mart*, 396 F.3d at 124 n. 29. Regardless, as addressed below, these arguments also fail on their merits.

### 1. Bynum does not fall within the "transportation worker" exemption to the FAA.

On appeal, Bynum argues for the first time that she is a "transportation worker," and therefore she is exempt from the FAA. *See* Appellant Br. at 40-43. Even if the Court were to consider Bynum's argument, it fails because Bynum does not fall within the "transportation worker" exemption to the FAA.

26

The FAA "was a response to hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc.*, 532 U.S. at 111. "To give effect to this purpose, the FAA compels judicial enforcement of a ***wide range*** of written arbitration agreements." *Id.* (emphasis added). Section 1 of the FAA includes a narrow exemption from the Act's coverage, excluding "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

In *Circuit City*, the Supreme Court held that the residual provision of Section 1 (covering "any other class of workers engaged in . . . interstate commerce") must be construed narrowly, and affirmed decisions by various Courts of Appeal holding that the exemption covers only transportation workers "actually engaged in the movement of goods in interstate commerce." 532 U.S. at 112 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)).

Bynum has not and cannot establish that she falls within the Section 1 exemption to the FAA because she was not "engaged in" interstate commerce and she was not a "transportation worker" within the meaning of the FAA. In her brief, Bynum argues that "[t]he parties agree that Plaintiff's 'services involve interstate commerce,' and there is no genuine dispute that Plaintiff was a transportation/delivery worker throughout her employment." Appellant's Br. at 41. But the question under Section 1 of the FAA is not whether the services she

27

performed "involved" interstate commerce.  Instead, the question is whether the individual was "***engaged in*** interstate commerce," which is much narrower than the broad definition of "involvement" in interstate commerce.

In limiting the residual clause of the Section 1 exemption to "transportation workers," the Supreme Court held that the phrase "engaged in" interstate commerce used in the Section 1 exemption "is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce.'"  *Circuit City*, 532 U.S. at 118.[8]  The Court affirmed its previous holding that "engaged in commerce" covers "only persons or activities ***within*** the flow of interstate commerce," *id.* (quoting *Gulf Oil Corp. v. Copp Paving Co. Inc.*, 419 U.S. 186, 195 (1974)) (emphasis added), while the terms "affecting commerce" or "involving commerce" in Section 2 of the FAA indicate "Congress' intent to regulate to the outer limits of its authority under the Commerce Clause."  *Id.* at 115 (citing *Allied-Bruce*, 513 U.S. at 277).  The Court buttressed its "narrower" and "precise" construction of the Section 1 exemption for "transportation workers" with "the fact that the provision is contained in a statute that 'seeks broadly to overcome judicial hostility to

---

[8] Because Section 2 of the FAA applies to any contract "evidencing a transaction ***involving*** commerce," its reach is much broader than the narrow Section 1 exemption for "transportation workers," which is limited to those actually engaged in interstate commerce.  *See* 9 U.S.C. § 2 (emphasis added); *see also Circuit City*, 532 U.S. at 112, 114 (distinguishing "basic coverage authorization under § 2 of the Act" from "exemption from coverage under § 1").

28

arbitration agreements.'" *Id.* at 118-19 (quoting *Allied-Bruce*, 513 U.S. at 272-73).[9]

Here, Bynum admits that she lives in New York and performed services for Instacart only in New York. Appellant Br. at 4 (citing A9-10 at ¶¶ 7, 12). Bynum has neither alleged nor presented any evidence that she was ever "engaged in" interstate commerce by crossing state lines in the course of her independent contractor services for Instacart. To the contrary, the services she performed were local deliveries within New York. A9-10; A84.

Bynum relies solely on a citation to a district court decision in *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375 (E.D.N.Y. 2016). However, Bynum's citation to *Diaz* is misplaced. Contrary to Bynum's argument, the court in *Diaz* did not "conclude" that the plaintiffs in that case were transportation workers exempt from the FAA. Instead, the court explicitly declined to decide whether the exemption to the FAA applied, because it found that the plaintiffs'

---

[9] Guided by *Circuit City*'s circumscribed "transportation workers" exemption, federal courts have focused on whether the class of workers at issue, or the work of the defendant company, is directly engaged in interstate commerce. In *International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954 (7th Cir. 2012), the Seventh Circuit painstakingly analyzed the plaintiffs' exemption argument and framed the central question as follows: "if he crosses state lines he is 'actually engaged in the movement of goods in interstate commerce.'" *Id.* at 957 (quoting *Circuit City*, 532 U.S. at 112). The court concluded that because "truckers occasionally transported loads into Missouri [from Illinois]," they were "interstate transportation workers within the meaning of § 1 of the FAA." *Id.* Similarly, in *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit held that the "interstate transportation factor is a necessary . . . showing for the purposes of the [FAA] exemption." *Id.* at 1290 (citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998)). District courts in this Circuit have similarly limited the application of the exemption: "[T]he handful of cases in this Circuit that have found that a worker falls under the residuary exemption . . . all involve workers who either physically move goods through interstate commerce, such as truck drivers, or workers who are closely tied to this movement of interstate goods, such as air cargo agents." *Kowaleski v. Samandarov*, 590 F. Supp. 2d 477, 481-85 (S.D.N.Y. 2008).

claims were arbitrable under New York arbitration law. *Id.* at 380-81 ("Nevertheless, the Court need not make that determination because the Court agrees with Defendants that, even assuming that Plaintiffs fall within the § 1 exemption (and the FAA does not apply), Plaintiffs' claims are subject to mandatory arbitration under New York arbitration law.").  Accordingly, *Diaz* does not support Bynum's argument that she was "engaged in" interstate or foreign commerce.

Because Bynum has neither alleged nor presented any evidence that she was "engaged in" the transportation of goods in interstate or foreign commerce, Bynum's new argument on appeal that she is "exempt" from arbitration under the FAA fails to provide any basis to reverse the district court's orders.

### 2. The pre-dispute arbitration agreement does not impermissibly waive Bynum's FLSA rights.

This Court should not consider Bynum's new argument—raised for the first time on appeal—that *even if the FLSA rights are arbitrable*, after *Cheeks*, "FLSA rights such as the right to a judicial forum, cannot be prospectively waived, because of the inherent inequality of bargaining power between employers and employees."  Appellant Br. at 33.  At the district court, Bynum argued only that the FLSA claims were not arbitrable.  *See* Pls.'s Mem. of Law In Opp'n to Def.'s Mot. to Compel Arbitration, *Bynum v. Maplebear Inc., d/b/a Instacart*,  No. 1:15-cv-

30

062363-JBW-CLP (E.D.N.Y. Jan. 5, 2016), ECF No. 29. Bynum did not argue that *even if the FLSA claims were arbitrable* they could not be subject to a pre-dispute agreement to arbitrate. *Id.* Bynum's failure to raise the issue before the district court waived this argument. *See Askins*, 727 F.3d at 252.

But even if considered, Bynum's new argument that FLSA claims cannot be subject to pre-dispute agreements to arbitrate fails as a matter of law. *First*, as discussed above, the Second Circuit has recognized that FLSA claims may be compelled to arbitration pursuant pre-dispute agreements to arbitrate under the FAA. *See Sutherland*, 726 F.3d at 297. *Second*, contrary to Bynum's argument, an agreement to arbitrate does not waive her FLSA rights. In *Gilmer*, a case Bynum relies on heavily, the Supreme Court explicitly recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26. That is precisely the case here. As explained above, there is no limitation on the arbitrator's ability to award whatever relief may be appropriate under applicable law. A29 (IC Agreement at § 7.3).

The Supreme Court in *Gilmer* recognized that "[m]ere inequality in bargaining power" is insufficient to hold agreements to arbitrate employment disputes invalid. *Gilmer*, 500 U.S. at 33. The *Gilmer* Court explained that the FAA's purpose was "to place arbitration agreements on the same footing as other

31

contracts" meaning that they are "enforceable 'save upon such grounds as exist at

law or equity for the revocation of any contract." *Id.* Bynum never argued at the

district court that Instacart's arbitration agreement was unconscionable or the

subject of fraud and has waived any such arguments. *See* Pls.'s Mem. of Law In

Opp'n to Def.'s Mot. to Compel Arbitration, *Bynum v. Maplebear Inc., d/b/a

Instacart*, No. 1:15-cv-062363-JBW-CLP (E.D.N.Y. Jan. 5, 2016), ECF No. 29.

Indeed, Bynum's argument that arbitration of FLSA claims would impose

"prohibitively high costs of arbitration" is false. Appellant Br. at 33. The parties

have stipulated, and the district court recognized, that Instacart would be paying all

of the arbitrator's fees as part of the arbitration. A121. Bynum would not be

required to pay any fee or cost that she would not be required to pay in court. In

addition, the arbitration would take place in New York where Bynum lives.

A119.[10]

None of the cases Bynum cites support her position that a pre-dispute

agreement to arbitrate amounts to an impermissible waiver of FLSA rights. In

*Gilmer*, FLSA claims were not even at issue. After finding Gilmer failed to meet

---

[10] Bynum similarly makes the bare and baseless assertion on appeal that the "entire purported 'independent contractor' agreement here is permeated with illegality because it seeks to misclassify Plaintiff as nonemployee to deny her of all rights under the FLSA," Appellant Br. at 34, and "[a]s such, the entire purported agreement, including the arbitration provisions must be invalidated under the FLSA," *id.* That assertion is unsupported by any evidence: Bynum has presented no evidence whatsoever that she has been misclassified by Instacart. In any event, any such evidence should be presented to the arbitrator, not the district court. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court.").

1145850

his burden of showing that Congress intended to preclude arbitration of Age

Discrimination Employment Act ("ADEA") claims, the Supreme Court held an

ADEA claim may be subjected to compulsory arbitration. *Gilmer*, 500 U.S. at 23.

The *Brooklyn Savings* decision explains that the FLSA prohibits waiver of the

*right to liquidated damages* and that interest may not be recovered on minimum

wages and liquidated damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710-

16 (1945). Similarly, in *Gangi*, the Court held that the remedy of liquidated

damages for a FLSA claim cannot be bargained away by bona fide settlements

over dispute coverage. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 114 (1946).

Here, Bynum's potential damages are not limited or waived by the IC Agreement:

the arbitrator has the authority to award whatever relief is appropriate under

applicable law. A29 (IC Agreement at § 7.3).

Similarly, Bynum's claim that her argument is supported by this Court's

precedents in *Cheeks* and *Caserta* is wrong. *Cheeks* addressed whether FLSA

actions are an exception to the rule that "parties may stipulate to the dismissal of an

action without the involvement of the court," 796 F.3d at 201, and *Caserta*

addressed an appeal challenging whether Caserta was an employee engaged in

commerce or in the production of goods for commerce, whether Caserta was

precluded from recovery by estoppel and parol evidence rule, and whether Caserta

was entitled to liquidated damages. *Caserta v. Home Lines Agency, Inc.*, 273 F.2d

33

943, 945 (2d Cir. 1959).  Neither of these cases address the enforcement of an arbitration provision, much less stand for the unprecedented proposition that an FLSA claim cannot be subject to a pre-dispute agreement to arbitrate.[11]

In sum, Bynum's attempt to craft a new argument on appeal that even if the FLSA claims are arbitrable they cannot be subject to a pre-dispute agreement to arbitrate is wrong as a matter of law.[12]

### 3.    The Parties agreed to arbitration.

Finally, this Court should reject Bynum's new argument on appeal that "there was no meeting of the minds or agreement to arbitrate between the parties." Appellant Br. at 49.  In moving to compel arbitration, Instacart submitted evidence establishing a prima facie case that it entered into a valid arbitration agreement with Bynum.  Based upon this evidence and the parties' stipulation to strike the

---

[11] Bynum's argument that "a waiver of the FLSA right to a judicial forum should only be enforceable where: 1) the waiver was made post-dispute; 2) the employee was represented by counsel at the time of the waiver and in connection with the waiver; and 3) the waiver was explicit, clear and unmistakable, in addition to the other standard requirements" fails for the same reasons.  *Cheeks* does not support Bynum's attempt to create a new standard for when to enforce arbitration provisions.  This Court has already recognized that such pre-dispute agreements are enforceable.  *See Sutherland*, 726 F.3d at 299.

[12] Bynum briefly argues that "the mandatory arbitration provisions are especially inconsistent and in conflict with the anti-retaliation and anti-discrimination provisions of the FLSA and NYLL."  Appellant Br. at 24.  Bynum waived this argument by failing to raise it before the district court.  *Askins*, 727 F.3d at 252.  The argument is also meritless.  The provisions of the FLSA and NYLL that Bynum cites have no application here: section 215(a)(3) of FLSA provides it is unlawful to discharge or discriminate against an employee because the employee filed a complaint or initiated proceedings, and section 216(b) provides the relief for such a violation.  *See* 29 U.S.C. §§ 215(a)(3), 216(b).  NYLL section 215(1)(a) similarly governs retaliation against employees who file a complaint or initiate proceedings.  *See* N.Y. Lab. Law § 215.  None of these statutory provisions address the propriety of an arbitration provision in the contract governing the relationship between a company and an individual—here the IC Agreement.  The Southern District of New York court order in *Reyes v. HIP at Murray Street, LLC, et al.* is equally inapposite: there the court denied approval of a settlement agreement containing a provision prohibiting the plaintiffs from obtaining future employment with the defendants.  *See* 15-cv-00238(LGS), ECF No. 60.  Bynum does not allege that she has been retaliated or discriminated against in any way, nor allege that she has been prohibited from future employment with Instacart.

34

venue, fee splitting, and fee sharing clauses, the district court found that "the arbitration agreement is valid and enforceable." A121. That finding is reviewable only for "clear error." *See Genesco*, 815 F.2d at 845 (whether the parties have agreed to arbitrate is a factual question).

Here, the record provides ample support for the district court's factual finding: Bynum signed the IC Agreement after having sufficient time to review it; she was given an electronic copy of the IC Agreement and the JAMS Minimum Standards of Procedural Fairness; and thereafter the parties both performed under the Agreement. A21-23; A24-45. During the hearing on Instacart's motion to compel, Bynum acknowledged she signed the IC Agreement. A84. Bynum's electronic signature is valid and enforceable pursuant to the U.S. Electronic Signature in Global and National Commerce Act of 2000 (E-SIGN).[13] Bynum's unsubstantiated allegation that there are "serious questions about the entire alleged electronic signature/agreement process" is insufficient to cast doubt on the validity of the IC Agreement. Bynum has not proffered any facts or evidence suggesting the arbitration agreement is invalid.

For the first time on appeal, Bynum now argues that there was no arbitration agreement between the parties because Defendant did not sign the agreement.

---

[13] *See* 15 U.S.C. § 7001 (a)(1) ("Notwithstanding any statute, regulation, or other rule of law … with respect to any transaction in or affecting interstate or foreign commerce, (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form").

35

Appellant Br. at 49. Bynum again has waived this argument by failing to raise it before the district court. *Askins*, 727 F.3d at 252. However, even if this Court considered the argument, "it is well-established that a party may be bound by an agreement to arbitrate even absent a signature." *Genesco*, 815 F.2d at 846; *see also 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co*., 634 F.3d 112, 124 (2d Cir. 2011) ("[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound.").[14]

Here, there can be no dispute that Bynum and Instacart intended to be bound by the IC Agreement, that each performed under the agreement, and that Instacart paid funds to Bynum under the agreement. After signing the IC Agreement on October 15, 2014, Bynum began using the Instacart Platform as a Personal Shopper on or around October 13, 2014. A23. For its part, Instacart granted Bynum access to its communications platform and paid out funds to her per the terms in her IC Agreement. *Id.* Accordingly, after Bynum reviewed and signed her IC Agreement, she and Instacart indicated their mutual assent to the agreement by performing under its terms.

The district court's factual finding that the parties agreed to arbitrate should be affirmed.

---

[14] An analysis under California law reaches the same result. *See Serafin v. Balco Properties Ltd.*, LLC, 235 Cal. App. 4th 165, 177 (2015), review denied (June 10, 2015) ("Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so." (citing Cal. Civ. Code § 3388)).

1145850

## VI.    CONCLUSION

For the foregoing reasons, Instacart respectfully requests that the Court

dismiss Bynum's appeal and affirm the district court order dismissing Bynum's

claims with prejudice.


San Francisco, California
April 10, 2017                          By:    */s/ Benjamin W. Berkowitz*
                                               Benjamin W. Berkowitz
                                               Nikki K. Vo
                                               KEKER, VAN NEST & PETERS LLP
                                               633 Battery Street
                                               San Francisco, CA  94111-1809
                                               Telephone:  (415) 391-5400
                                               Facsimile:   (415) 397-7188

                                               Alice K. Jump
                                               Reavis Parent Lehrer LLP
                                               41 Madison Avenue, 41st Floor
                                               New York, NY  10010
                                               Telephone:  (212) 763-4100
                                               Facsimile:   (212) 763-4141

                                               Counsel for Respondent
                                               MAPLEBEAR, INC. d/b/a
                                               INSTACART

37

## <u>CERTIFICATION PURSUANT TO FED. R. APP. P. 32</u>

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 because the brief contains 9,338 words of text.

The brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32 because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2010, Times New Roman, Size 14.

San Francisco, California
April 10, 2017                     By:     */s/ Benjamin W. Berkowitz*
                                          Benjamin W. Berkowitz
                                          Nikki K. Vo
                                          KEKER, VAN NEST & PETERS LLP
                                          633 Battery Street
                                          San Francisco, CA  94111-1809
                                          Telephone:  (415) 391-5400
                                          Facsimile:   (415) 397-7188

                                          Alice K. Jump
                                          Reavis Parent Lehrer LLP
                                          41 Madison Avenue, 41st Floor
                                          New York, NY  10010
                                          Telephone:  (212) 763-4100
                                          Facsimile:   (212) 763-4141

                                          Counsel for Respondent
                                          MAPLEBEAR, INC. d/b/a
                                          INSTACART

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of April, 2017, Respondent Maplebear, Inc. d/b/a Instacart, by and through its attorneys, Keker, Van Nest & Peters LLP, served a copy of its DEFENDANT-APPELLEE'S RESPONSIVE BRIEF by ELECTRONICALLY POSTING to the ECF website of the United States Court of Appeals for the Second Circuit. The Court performed service electronically on all ECF-registered entities in this matter.

San Francisco, California
April 10, 2017

*/s/ Benjamin W. Berkowitz*
Benjamin W. Berkowitz
Nikki K. Vo
Julia L. Allen
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Alice K. Jump
Reavis Parent Lehrer LLP
41 Madison Avenue, 41st Floor
New York, NY 10010
Telephone: (212) 763-4100
Facsimile: (212) 763-4141

Counsel for Respondent
MAPLEBEAR, INC. d/b/a
INSTACART

39

1145850