# 16-3348

## United States Court of Appeals
## for the Second Circuit



MELODY BYNUM,

*Plaintiff-Appellant,*

v.

MAPLEBEAR INC., DBA INSTACART,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (Brooklyn)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000

DICK BAILEY SERVICE (212) 608-7666 (718) 522-4363 (516) 222-2470 (914) 682-0848 Fax: (718) 522-4024
1-800-531-2028 - Email: appeals@dickbailey.com -Website: www.dickbailey.com

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities .............................................................................................. ii

I. PRELIMINARY STATEMENT .......................................................................1

II. ARGUMENT ..................................................................................................5

  1.   THIS COURT HAS JURISDICTION OVER THIS APPEAL ...........................5

    (A).  DEFENDANT IGNORES THIS COURT'S PRIOR MANDATE AND THE INAPPLICABILITY OF THE FAA......................................................................5

    (B). THE SPLIT IN THESE CONSOLIDATED APPEALS ON THE ISSUE OF ARBITRATION COSTS COMPELLINGLY SUPPORTS PLAINTIFF'S DECISION TO APPEAL AND HIGHLIGHTS WHY FLSA CLAIMS ARE NONARBITRABLE .............7

  2.   FLSA CLAIMS ARE NONARBITRABLE – CONGRESSIONAL INTENT AND THE EFFECTIVE VINDICATION DOCTRINE ARE OBVIOUSLY NOT LIMITED TO THE UNION CONTEXT ................................................................................................9

  3.   THE FAA DOES NOT REQUIRE ENFORCEMENT OF ARBITRATION THAT VIOLATES FEDERAL STATUTES SUCH AS THE FLSA....................................15

  4.   DEFENDANT'S RELIANCE ON SUTHERLAND IS MISPLACED...........................16

  5.   AFTER CHEEKS, FLSA RIGHTS SUCH AS THE RIGHT TO A JUDICIAL FORUM, CANNOT BE PROSPECTIVELY WAIVED, BECAUSE OF THE INHERENT INEQUALITY OF BARGAINING POWER BETWEEN EMPLOYERS   AND EMPLOYEES ............................................................................................18

  6.   THE DISTRICT COURT LACKED JURISDICTION TO COMPEL ARBITRATION UNDER THE FAA – SECTION 1 OF THE FAA SPECIFICALLY EXCLUDES DELIVERY/TRANSPORTATION WORKERS LIKE PLAINTIFF ......................................22

  7.   THE PARTIES DID NOT AGREE TO ARBITRATE IN THE FIRST PLACE.............25

  8.   THIS COURT SHOULD STRIKE AND NOT CONSIDER THE NUMEROUS ARGUMENTS MADE ONLY IN FOOTNOTES BY DEFENDANT....................................26

III. CONCLUSION.............................................................................................27

i

# TABLE OF AUTHORITIES

## Cases

*Am. Exp. Co. v. Italian Colors Rest.*,
133 S. Ct. 2304, 2310 (2013) ........................................................................11, 16

*Barrentine v. Arkansas-Best Freight Sys. Inc.*,
450 U.S. 728 (1981) .............................................. 1, 2, 3, 4, 9, 10, 11, 12, 14, 19

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945) ............................................ 1, 2, 5, 12, 14, 19, 25

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199, 207 (2d Cir. 2015) ...............................................................*passim*

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .....................................................................................3

*D.A. Schulte, Inc. v. Gangi*,
328 U.S. 108, 66 (1946) ...................................... 1, 2, 5, 12, 14, 19, 25

*Diaz v. Michigan Logistics Inc.*,
-F.Supp.3d-, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016) ......................22, 23, 24

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*,
451 F.3d 295, 301 (2d Cir. 2006) ......................................................26

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840, 850 (2d Cir. 1987) ...........................................................1, 10, 25

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 32–33 (U.S. 1991) ......................................................20

*Gonzalez v. Thaler*,
565 U.S. 134, 141, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012) ...............3, 22

*Juan Rodriguez-Depena v. Parts Authority*, *Inc.*
2d Cir. Case No. 16-3396 .........................................................................7

*Lewis v. Epic Sys. Corp.*,
  823 F.3d 1147, 1156 (7th Cir. 2016), cert. granted,
  137 S. Ct. 809, 196 L. Ed. 2d 595 (2017) ........................................................3, 15

*Meyer v. Kalanick*,
  199 F. Supp. 3d 752 (S.D.N.Y. 2016) ...................................................................26

*Slayton v. Am. Express Co.,*
  460 F.3d 215, 224–25 (2d Cir.2006) .......................................................................6

*Sniado v. Bank Austria AG,*
  378 F.3d 210, 212–13 (2d Cir. 2004) ..............................................................3, 22

*Sutherland v. Ernst & Young LLP,*
  726 F.3d 290 (2d Cir. 2013) ................................................. 4, 8, 16, 17, 18, 19, 21

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,*
  515 U.S. 528, 530 (1995) ........................................................................................15

## Statutes

28 U.S.C. § 1292(b) .....................................................................................................5
Fair Labor Standards Act ("FLSA") ..............................................................*passim*
Federal Arbitration Act ("FAA") ...................................................................*passim*

## Rules and Regulations

29 C.F.R. § 779.103 ...................................................................................................24

# I. PRELIMINARY STATEMENT

Plaintiff Melody Bynum ("Plaintiff," "Appellant" or "Bynum"), hereby submits the instant brief in reply to the opposing brief of Defendant Maplebear Inc. ("Defendant," "Appellee" or "Maplebear"), and in further support of her appeal of the district court's orders compelling arbitration. Most of Defendant's arguments were already addressed in Plaintiff's opening brief ("Pl. Br."), but some additional points will be addressed herein.

First, the Supreme Court in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728 (1981), found "congressional ***intent*** that Fair Labor Standards Act of 1938 claims be nonarbitrable because of conflict between arbitration and FLSA's purposes." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 850 (2d Cir. 1987). The Supreme Court in *Barrentine* also invalidated arbitration in FLSA cases because of what we now call the effective vindication doctrine that the Supreme Court has repeatedly and recently affirmed. Contrary to Defendant's argument, *Barrentine* is not limited to union cases because Congressional intent and the effective vindication doctrine are obviously not limited to the union context.

Second, the Supreme Court in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 66 (1946), and the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), held that FLSA rights cannot be waived by private agreement because of the inherent inequality of bargaining power between employers and employees. An arbitration

agreement is therefore improper under the FLSA, because it not only waives the judicial right to a judicial forum, but may also result in the loss of wage rights because of costs, contractual nature and scope of arbitration, high standard of review, conflict of interest where arbitrator paid by employer etc. In the FLSA context, arbitration also violates the FLSA's anti-retaliation and anti-discrimination provisions (29 USC 215(3))– requiring workers to waive FLSA rights as a condition of employment, and by denying them employment if they refuse to waive their rights.

Defendant argues that *Brooklyn Savings, Gangi*, and *Cheeks* are limited to settlements and are inapplicable to arbitration. However, the Supreme Court has told us that Defendant is wrong – in *Barrentine*, 450 U.S. at 740, the Supreme Court invoked *Gangi* and *Brooklyn Savings* as the foundation of its arbitration analysis – reasoning that *Gangi* and *Brooklyn Savings* prohibit waiver of FLSA rights and that arbitration might result in loss or waiver of FLSA rights. Also, *Cheeks,* 796 F.3d at 206, not only prohibited the waiver of wages by private agreement, it also prohibited provisions in strong tension with the FLSA – a prohibition that dooms arbitration under the FLSA and especially in this case.

Third, Defendant and the district court appear to acknowledge that arbitration and the arbitration in this case violates and is in tension and conflict with the FLSA, but they seem to argue that such a conflict is resolved in favor of the FAA and arbitration. However, while the FAA does not apply in this case, the FAA excludes and does not require enforcement of arbitration that is illegal under another federal

statute. As the Seventh Circuit explained in *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1156 (7th Cir. 2016), cert. granted, 137 S. Ct. 809, 196 L. Ed. 2d 595 (2017), this is because the FAA recognizes contract defenses such as illegality. Moreover, even if there was a conflict, the FLSA would trump the FAA for very much the same reasons that the Supreme Court in *Barrentine,* 450 U.S. at 736–37, held that the tension/conflict between the LMRA and FLSA would be resolved in favor of the FLSA.

Fourth, the district court based its entire decision on the FAA. However, the district court did not have jurisdiction to compel arbitration under the FAA because transportation/delivery workers like Plaintiff are specifically excluded under Section 1 of the FAA. See i.e., *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). In response, Defendant claims this argument was not raised below and has been waived. However, this argument can be viewed as a jurisdictional argument and such jurisdictional arguments are never waived and can be raised at any time. *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012). Moreover, Defendant has the burden of showing that the FAA applies. In any event, the requirements for this Court to consider this argument are satisfied. *Sniado v. Bank Austria AG*, 378 F.3d 210, 212–13 (2d Cir. 2004) ("We have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding.").

On the merits, Defendant does not deny that plaintiff is a transportation worker but claims that though Plaintiff was *involved* in interstate commerce, she was not *engaged* in interstate commerce. However, Defendant's own description of Plaintiff's work demonstrates as a matter of law that Plaintiff was engaged in interstate commerce. At minimum, issues of fact as to whether Plaintiff's involvement in interstate commerce rose to the level of engagement, would preclude the use of the FAA to compel arbitration in this case.

Fourth, Defendant's reliance on this Court's decision in *Sutherland v. Ernst & Young LLP,* 726 F.3d 290 (2d Cir. 2013), is misplaced. *Sutherland* involved the narrow issue of class action waiver. Whatever we think of *Sutherland*, the issues and arguments here were never raised or addressed in *Sutherland* and even the district courts in these two consolidated appeals seem to recognize that. Sutherland was also decided about two years before *Cheeks* which created a new reality under the FLSA.

Notably, it appears that the district court also agrees with Plaintiff but for the distinction between FLSA and non-FLSA cases, as exemplified by the following exchange at the February 8, 2016 hearing (A92:9-13):

> MR. HASSAN: So, our position would be that the court should find that FLSA claims are not arbitrable. Thank you.
>
> THE COURT: It's a very powerful argument and I tend to agree with you, but I'm not sure the Supreme Court hasn't gone the other way with respect to arbitration.

However, the "Supreme Court hasn't gone the other way with respect to arbitration," in FLSA cases. The only Supreme Court case (*Barrentine)*, dealing with

arbitration in FLSA cases invalidated arbitration. Once again, the big mistake made by the lower court and by the other courts relied on by Defendant, was in failing to distinguish the FLSA which is a "uniquely protective statute," *Cheeks*, 796 F.3d at 207, from other statutes such as the antitrust and age discrimination statues which do not have the same remedial purpose and do no place the same restrictions on the waiver of statutory rights as does the FLSA. (Pl. Br. 33-39). In other words, the fact that the Supreme Court held that antitrust claims and age discrimination claims are arbitrable, does not mean it will hold that FLSA claims are arbitrable – since *Gangi* and *Brooklyn Savings* in the 1940s, the Supreme Court and the Second Circuit have consistently reaffirmed the non-waivable nature of FLSA rights.

## II. ARGUMENT

### 1. THIS COURT HAS JURISDICTION OVER THIS APPEAL

### (A). DEFENDANT IGNORES THIS COURT'S PRIOR MANDATE AND THE INAPPLICABILITY OF THE FAA

Defendant incorrectly argues that Plaintiff voluntarily dismissed her claim pursuant to FRCP 41(a)(2), and as such, there is no jurisdiction over this appeal. We begin with this Court's July 13, 2016 mandate which Defendant appears to ignore (A139-A140):

> The district court should determine, in the first instance, whether the Appellant's waiver of the right to arbitrate entitles the Appellant to termination of the existing stay and dismissal of the action, and/or whether certification under 28 U.S.C. § 1292(b) is appropriate.

Consistent with the Court's mandate, Plaintiff made it abundantly clear that she wished to pursue her case in Court because she has the right to do so, and not in arbitration where she faced great uncertainty and risks. (A144:19-25; A145:1-20; A153:7-11) (A161 – A168, ¶ 14-21). See i.e. *Slayton v. Am. Express Co.,* 460 F.3d 215, 224–25 (2d Cir.2006). Plaintiff never asked the district court to dismiss the case pursuant to FRCP Rule 41 – Plaintiff did not even mention Rule 41.

In light of this Court's mandate and Plaintiff's position, the district court's dismissal order is the equivalent or terminating the stay and dismissing the action after compelling arbitration. Where, as here, the primary relief sought by Defendant was dismissal if arbitration was compelled, the district court can enter a final and appealable order of dismissal which is how the district court's order can and should be construed.

Very significantly, we now know that the FAA does not apply in this case because it excludes transportation workers like Plaintiff. As such, the orders compelling arbitration and Defendant's jurisdictional arguments are without any basis in law because they are based entirely on the FAA. (See also, Pl. Br. 1-2). We can rest assured that if Defendant's jurisdiction argument had any merit, it would have file a motion to dismiss the appeal as it did the first time around.

**(B). THE SPLIT IN THESE CONSOLIDATED APPEALS ON THE ISSUE OF ARBITRATION COSTS COMPELLINGLY SUPPORTS PLAINTIFF'S DECISION TO APPEAL AND HIGHLIGHTS WHY FLSA CLAIMS ARE NONARBITRABLE**

In the other consolidated appeal - *Juan Rodriguez-Depena v. Parts Authority*, Inc. 2d Cir. Case No. 16-3396, the arbitration "agreement" also requires Plaintiff to pay half of the costs of the arbitrator. (See 2d Cir. Case No. 16-3396; ECF Doc. No. 1946798). There is no real dispute, as the district court here found, that "plaintiff would be forced out of the game," (A118), because of such costs, and would lose her FLSA claims which is relatively small in amount. However, despite relying heavily on Judge Weinstein's decision here in *Bynum*, the district court in *Rodriguez* did not invalidate the arbitration cost provisions in the arbitration agreement.

The split reminds us that the decision to forego arbitration here was necessary and not "voluntary" because Judge Weinstein does not have the power to bind other judges, a higher court, or even the arbitrator who may have different powers under unsettled arbitration jurisprudence to disagree with judge Weinstein and award costs – some courts and defendants have argued that such power and decisions are for the arbitrator and not the district judge – though court has the power to determine arbitrability of claims and the impact of a variety of actors on this issue.

It would be a big and potentially very expensive mistake for Plaintiff to trust her adversary not to later seek costs against her as provided for in the "agreement" where Defendant's interests and the unsettled nature of the law may require and allow

it to do just that, and especially in the circumstances of this case[1]. Moreover, it is also not clear how this court will rule on the cost provisions – Defendant is interpreting this Court's decision in *Sutherland* and related Supreme Court decisions as permitting such costs. Even if the Defendant paid all costs, that would create an insurmountable conflict of interest problem where Plaintiff's adversary is paying the decision-maker. In addition, in the event the arbitrator adopted the independent contractor agreement which in effect waived all FLSA rights, Plaintiff would not be able to have that decision corrected because of the high standard of appeal. Plaintiffs often have to resort to the appellate courts to protect their FLSA rights and the standard of appeal matters greatly in these cases. (See also A161 – A168, ¶ 14-21).

    While Plaintiff should not have been put in the position the district court put her in by compelling arbitration - once in that position, Plaintiff obviously could not risk paying tens of thousands of dollars for the chance of recovering a relatively small amount of wages, along with the other risks of losing her claims.

    Relatedly, we noted that cases compelled to arbitration don't actually reach arbitration – that they are settled for peanuts and large waiver of wages because of orders compelling arbitration. (Pl. Br. 26). This point has been confirmed in dramatic fashion. Just recently, Defendant Maplebear (Instacart) herein, settled with about

---

[1] There was really no stipulation or binding stipulation to waive costs and venue. Even if there was, Defendant can argue that it only agreed after the district court found the costs and venue provisions unconscionable (A87:13-25) – that if the arbitrator finds otherwise, the concession as to costs goes away. Also, in the event the arbitrator finds that Plaintiff is an independent contractor, Defendant can argue that it is entitled to costs under JAMS' commercial rules which may apply instead of JAMS' employment rules, etc. etc.

31,000 misclassified delivery/transportation workers for about $90 each on average, after those cases were forced into arbitration[2]. In other words, rather than face the obstacles in arbitration that Plaintiff is challenging in this case, those other workers had to take peanuts or worse it seems. This is also precisely why this Court needs to exercise jurisdiction over this appeal and rule that FLSA claims are nonarbitrable.

We also respectfully point out that some judges become very annoyed and frustrated when appealed. This Court should remind all concerned that an appeal is not an affront or personal insult to the judge as to which the judge should react negatively – it is a respectful and necessary exercise of an important legal right to correct errors and protect the interests of litigants and the integrity of the judicial system. Judges, attorneys, and litigants can disagree without being disagreeable.

## 2. FLSA CLAIMS ARE NONARBITRABLE – CONGRESSIONAL INTENT AND THE EFFECTIVE VINDICATION DOCTRINE ARE OBVIOUSLY NOT LIMITED TO THE UNION CONTEXT

Plaintiff argues that FLSA claims are nonarbitrable, including under the Supreme Court's precedent in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 740 (1981). (Pl. Br. 18-32). Like the district court, Defendant erroneously argues that *Barrentine* is limited to cases involving unions – because the union may choose not to present the employee's claim. (Def. Br. 20). This is like aruing that *Miranda*

---

[2]

https://www.law360.com/employment/articles/915010/instacart-can-t-yet-ring-up-4-6m-misclassification-deal?nl_pk=6f088f33-5e03-4f4f-9759-74cc2ea5837f&utm_source=newsletter&utm_medium=email&utm_campaign=employment

warnings only apply to murder cases from Arizona because *Miranda* was a murder case from Arizona – while ignoring the logic and reasoning for *Miranda* warnings. We pointed out that *Barrentine* itself rejected Defendant's argument when it noted that, "even when the union has fairly and fully presented the employee's wage claim, the employee's statutory rights might still not be adequately protected …" *Barrentine, 450 U.S. at 743* – it appears that Defendant did not even address this critical point which destroys its whole case.

Second, while citing other cases and arguing that nothing in the FLSA prohibits arbitration of FLSA claims, Defendant did not and could not dispute that the Supreme Court in *Barrentine* found FLSA claims to be nonarbitrable based on the intent, text and remedial purpose of the FLSA. (Pl. Br. 18-32). In this regard, we noted that the Second Circuit read *Barrentine* the same way Plaintiff reads *Barrentine* – that *Barrentine* found "congressional ***intent*** that Fair Labor Standards Act of 1938 claims be nonarbitrable because of conflict between arbitration and FLSA's purposes." See Genesco 815 F.2d at 850. In response, Defendant could only argue that, "*Genesco* does not involve FLSA claims.  Instead, the case addressed whether a civil RICO claim was arbitrable." (Def. Br. 22). Whether *Genesco* was about RICO or cows on a farm, it is relevant, because in it, this Court read *Barrentine* and told us what the holding in *Barrentine* is – it is a powerful fact in favor of Plaintiff that both she and the Second Circuit read *Barrentine* the same way. Understanding *Barrentine*

10

is significant – it is a Supreme Court case which means that it would override all lower court rulings to the contrary.

Third, in addition to Congressional intent, the Supreme Court in *Barrentine* also found FLSA claims to be nonarbitrable based on what we now call the effective vindication doctrine that was reaffirmed by the Supreme Court in *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013), and other cases. Because the FLSA is a "uniquely protective statute," *Cheeks*, 796 F.3d at 207, the effective vindication doctrine may invalidate arbitration under the FLSA even though the same may not be true under other statutes. Once again, as with congressional intent, the effective vindication doctrine is not limited to the union context. In *Barrentine*, 450 U.S. at 742, the Supreme Court identified about two reasons why an employee's FLSA claim "might be lost" in arbitration. Here, as we explained at length without any meaningful opposition from defendant, there are many more reasons why employee's claim "might be lost" and "not be adequately protected" in arbitration outside the union context. (Pl. Br. 27-32).

There appears to be no dispute that the cost and venue provisions in the arbitration agreement would cause Plaintiff to lose her FLSA claims by forcing her out of the game, as the district court itself found. (A118). Defendant tries to argue that such cost provisions were stricken by the district court. However, as we have explained above (pg 6-7), the law in this area is unsettled and Defendant may still be able to claim such costs in arbitration. (See also, A161 – A168, ¶ 14-21). We observe

11

that in the other case consolidated for appeal (*Rodriguez*), the cost provisions have not been stricken. A ruling by this Court could obviously settle the issue.

Fourth, given Defendant's apparent acknowledgement now that these cost and venue provisions are unconscionable and should be stricken (A87-A88), it appears that the only reason Defendant imposed these provisions in the first place was to deter workers from ever asserting their claims even in arbitration. It appears that Defendant is still including these unconscionable provisions in its adhesion arbitration agreements. Because this Court cannot prevent such abuses by employers and cannot afford to jeopardize FLSA rights in which the public has a strong interest, this reason alone is sufficient to hold that FLSA claims are nonarbitrable.

A case by case approach, as this case shows, is difficult, time-consuming, and expensive for the employee and the court, and will also deter most workers from even challenging the unconscionable and unlawful cost and other provisions and from pursuing FLSA claims. The Courts in *Gangi*, *Brooklyn Savings*, *Barrentine* and *Cheeks* all adopted an across the board rule disallowing the waiver of FLSA rights by private agreement, instead of a case by case approach – based on the inherent inequality of bargaining power and the fact that the FLSA is a "uniquely protective statute." (Pl. Br. 33-39). As such, this Court should also adopt an across the board rule that FLSA claims are nonarbitrable.

Fifth, Plaintiff argues that even if Defendant alone pays the arbitrator, that would create an intolerable conflict of interest that jeopardizes Plaintiff's claims. (Pl.

Br. 28-29). Defendant does not appear to disagree but instead argues that the

arbitrator would not know who is paying fees. (Def. Br. 22, fn 4). However,

Defendant is wrong. JAMS' employment rules state that the employer will be paying

all of the arbitrator's fees, and it also states that an arbitrator can preclude a party who

has not paid that party's share of fees from offering evidence. (JAMS Rule 31(b) and

(c)). Defendant also intimates that Plaintiff agreed for it to pay arbitration fees and

therefore waived any resulting conflict of interest. There was no such stipulation.

Plaintiff agreed that the costs provisions are invalid and should be stricken as part of

her argument that the FLSA claims were nonarbitrable (A87:17-25 - A88:1-12) – not

so that the FLSA claims would be deemed arbitrable. That Defendant also had to

agree with the district court that such cost provisions should be stricken after the

district court declared them to be invalid and unconscionable (A87:13-25), does not

create any stipulation, and certainly not one waiving an insurmountable conflict of

interest. Likewise, that Plaintiff would not want to pay an arbitrator's fees if she is

eventually forced into arbitration over her objection, does not mean she is waiving

any conflict of interest.

Sixth, Defendant also does not appear to dispute that the very high standard

that applies to review of arbitration decisions might result in waiver or loss of FLSA

claims especially if the arbitration enforces the independent contractor agreement

which in effect waives all of Plaintiff's rights under the FLSA. (Pl. Br. 29-30).

13

Moreover, FLSA claims should also be nonarbitrable because of the great difficulty under the FAA of appealing even erroneous orders compelling arbitration that would result in waiver of FLSA claims – where the order compelling arbitration does not even strike unconscionable and unlawful cost and other provisions.

Seventh, Defendant also argues that cases like *Cheeks*, *Gangi*, *Brooklyn Savings*, and *Caserta*, are inapplicable because they did not deal with arbitration. Once again, these cases deal with the waiver of FLSA rights and arbitration is not only a waiver of the FLSA right to a judicial forum, arbitration as we have explained, can also result in the loss or waiver of the FLSA right to wages, by imposing high costs and other barriers.

Very significantly, the Supreme Court in *Barrentine* disagreed with Defendant's argument that *Gangi* and *Brooklyn Savings* had nothing to do with arbitration. The Supreme Court in *Barrentine,* 450 U.S. at 740, specifically invoked *Gangi* and *Brooklyn Savings* as the foundation of its arbitration analysis – noting that *Gangi* and *Brooklyn Savings* prohibit the waiver of wages and that arbitration may result in the loss or waiver of wages in a variety of ways – even more such ways exist in this case. (Pl. Br. 18-32). Similarly, unlike Defendant, this Court in *Cheeks*, looked at the reasoning behind *Gangi* and *Brooklyn Savings* to conclude that Congress intended the FLSA to be an exception to Rule 41, even though the text of the FLSA and Rule 41 did not contain such an exception. This Court in *Cheeks*, 796 F.3d at 207, found that there was an inherent inequality of bargaining power between

14

employers and employees even where the employee is represented by counsel. In addition, *Cheeks*, 796 F.3d at 206, not only prohibited the direct waiver of FLSA wages, it also disapproved of provisions in "strong tension with the remedial purposes of the FLSA," and waiver of FLSA rights, "that have no relationship whatsoever to wage-and-hour issues" in dispute. Arbitration and its many flaws that we have explained, cannot survive scrutiny under *Cheeks*.

### 3. THE FAA DOES NOT REQUIRE ENFORCEMENT OF ARBITRATION THAT VIOLATES FEDERAL STATUTES SUCH AS THE FLSA

Defendant and the district court do not seem to seriously dispute Plaintiff's arguments that arbitration violates the FLSA especially under the arbitration agreement here. However, they seem to argue that the FAA trumps the FLSA by repeatedly emphasizing the FAA's strong presumption in favor of arbitration. In so doing, they confuse the analysis - a confusion that permeates almost all of the cases that Defendant relies on. In fact, it is only recently that courts have begun to untangle this confusion. As the Seventh Circuit noted in *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1156 (7th Cir. 2016), cert. granted, 137 S. Ct. 809, 196 L. Ed. 2d 595 (2017), an arbitration agreement that violates or undermines a federal statute is unenforceable under the FAA which recognizes contract defenses such as illegality. As such, invalidating an arbitration agreement that is in conflict with or which undermines the FLSA does not create a conflict with the FAA. See also *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 530 (1995) ('The parties devote much of their

15

argument to the question whether COGSA or the FAA has priority. "[W]hen two statutes are capable of co-existence," however, "it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."'").

### 4. DEFENDANT'S RELIANCE ON SUTHERLAND IS MISPLACED

Plaintiff has explained that the cases relied upon by Defendant all suffer from very much the same defects. (Pl. Br. 43-49). Nonetheless, we will further address *Sutherland*, because it is a circuit precedent – as opposed to an unpublished summary order, lower court ruling, or ruling from another circuit.

Defendant cites *Sutherland* for the proposition that, "the FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms" pursuant to the FAA." (Pl. Br. 19). However, the *Sutherland* Court was referring only to the class-action waiver provision in the arbitration agreement which it reiterated numerous times in the opinion – including as follows (*Sutherland*, 726 F.3d at 299):

> The Fair Labor Standards Act of 1938 does not include a "contrary congressional command" that prevents a *class-action waiver* provision in an arbitration agreement from being enforced by its terms

*Sutherland* was based on and was a response to a Supreme Court decision which was also limited to class action waiver. *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310–11, 186 L. Ed. 2d 417 (2013) ('The antitrust laws do not

"evinc[e] an intention to preclude a waiver" of class-action procedure.'). Central to the holdings in *American Express* and *Sutherland* was the reasoning that in class actions under Rule 23 as well as collective actions under the FLSA, putative class members can waive their right to participate in the class – by opting out in Rule 23 cases and by not opting into FLSA collective action cases. Whatever we think of this reasoning, it is inapplicable here because the FLSA does not provide or allow the waiver or any other right and this case is not a collective action. The Court in Sutherland did not address or decide the issues and arguments presented herein, and even both district judges in these consolidated appeals appear to recognize this fact.

Significantly, the Supreme Court in *American Express*, 133 S. Ct. at 2310, upon which *Sutherland* is based, specifically reaffirmed the effective vindication doctrine, and stated in relevant part as follows:

> As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party's right to pursue statutory remedies," Mitsubishi Motors, supra, at 637, n. 19, 105 S.Ct. 3346 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. See Green Tree Financial Corp.–Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights").

In *Sutherland*, the employer was paying the costs of the arbitration – such as the arbitrator's fees. It appears that the only costs at issue in *Sutherland*, were costs that the plaintiff would have been responsible for even if she filed her case in Court

17

and not in arbitration – i.e. her own legal fees and case costs. The desire and focus in Sutherland was in bringing a class action case – whether in court or in arbitration. This also helps to explain why the parties in *Sutherland* never raised or argued, and why the Court in *Sutherland* did not address or decide the issue of the arbitrability of individual FLSA claims – at most the Court assumed arbitrability along with the parties. Even if the claims were allowed to proceed in Court, Sutherland may not have pursued the claims given the waiver of the class/collective action. By contrast, in both consolidated appeals here, we are dealing with individual claims which the parties would like to litigate in Court. These cases here also involve arbitration costs and obstacles not at issue in Sutherland, and which the Supreme Court in *American Express*, reaffirmed could be the basis for invalidating arbitration under the effective vindication doctrine. If the effective vindication doctrine cannot bar arbitration under a "uniquely protective statute" like the FLSA, the doctrine is dead but the Supreme Court has reaffirmed that it is not dead.

   5. **AFTER *CHEEKS*, FLSA RIGHTS SUCH AS THE RIGHT TO A JUDICIAL FORUM, CANNOT BE PROSPECTIVELY WAIVED, BECAUSE OF THE INHERENT INEQUALITY OF BARGAINING POWER BETWEEN EMPLOYERS AND EMPLOYEES**

   Plaintiff argues that after *Cheeks*, FLSA rights such as the right to a judicial forum, cannot be prospectively waived, because of the inherent inequality of bargaining power between employers and employees. Defendant addresses this argument on pages 30-34 of its brief. Defendant first argues that this argument is

waived because it was not raised below. Defendant is wrong, In the district court, Plaintiff specifically invoked *Brooklyn Savings*, *Gangi* and *Cheeks* to argue that FLSA rights cannot be waived by private agreement because the FLSA is a "uniquely protective statute." Defendant does not seem to realize that the central basis for the holdings in these cases is the inherent inequality of bargaining power between employer and employee. There is considerable overlap between the strict arbitrability issue based on *Barrentine* and the strict waiver issue based on *Cheeks*.

Second, Defendant invokes this Court's decision in *Sutherland*. However, *Sutherland* was decided about two years before Cheeks, so the parties and the Court could not have possibly addressed *Cheeks* in that case – *Cheeks* created a new reality and awareness of the unique nature of FLSA jurisprudence. Moreover, as we have explained, *Sutherland* involved a narrow issue of class action waiver and is distinguishable on a variety of grounds – the issues or arguments here were never raised or addressed in *Sutherland*.

Third, Defendant argues that, "an agreement to arbitrate does not waive [Plaintiff's] FLSA rights." (Def. Br. 31). However, it is obvious that an arbitration agreement, at minimum, is a waiver of the FLSA's right to a judicial forum contained in 29 USC 216(b). If the inherent inequality of bargaining power prevents an employee from waiving the right to overtime and liquidated damages (*Gangi*, *Cheeks*), it would also prevent an employee from waiving her rights to a judicial forum – bargaining power does not magically increase when it comes to waiver of the

19

right to a judicial forum. The fact that the arbitration agreement here is one of adhesion, and contains unconscionable provisions (A87:13-25), is compelling proof that Plaintiff had virtually no bargaining power at the time of the adhesion arbitration agreement in this case.

We also note that because arbitration is a matter of contract and because of the high standard of review of arbitral decisions, there is a huge risk that FLSA wage rights can be waived in arbitration because of the high review standard, and draconian/unconscionable costs and venue provisions etc. The district court itself found that the arbitration venue and costs provisions would force plaintiff out of the game. (A118). In fact, in the arbitration agreement in this case, Plaintiff waived, as she was required to do by Defendant, all her FLSA rights, including her rights to wages – by "agreeing" that she was an independent contractor. If an arbitrator enforces such a complete waiver of FLSA rights – such a waiver cannot be reversed because of the high standard of review that applies to arbitration awards, as opposed to the standard for reviewing questions of law in this Court.

Fourth, Defendant argues that, 'The Supreme Court in Gilmer recognized that "[m]ere inequality in bargaining power is insufficient to hold agreements to arbitrate employment disputes invalid." (Def. Br. 31). The opposite is true. The complete quote from *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32–33 (U.S. 1991), is as follows:

20

> Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.

In other words, inequality of bargaining power may render arbitration agreements unenforceable but not always. Unlike other statutes, the FLSA is a "uniquely protective statute" under which inequality of bargaining power is a well-recognized ground for not enforcing contracts between employer and employee. *Cheeks*, 796 F.3d at 206.

Fifth, Defendant argues that, "Bynum never argued at the district court that Instacart's arbitration agreement was unconscionable or subject of fraud has waived such argument." (Def. Br. 31). Defendant confuses the issue, as does the cases it relied on. Once again, even though the arbitration agreement in this case was found to be unconscionable by the district court, a contract can be illegal under the FLSA without being unconscionable. As this Court noted in cheeks, "provisions in strong tension with the FLSA," violate the FLSA and are unlawful.

Fifth, Defendant argues that, "Bynum's argument that arbitration of FLSA claims would impose prohibitively high costs of arbitration is false." (Def. Br. 32). While it is true that the district court found such costs unconscionable, there are many ways in which Defendant can still seek costs in this case and it is not certain that such a ruling would be binding on an arbitrator or upheld by this Court. (pg 6-7 above). In fact, Defendant seems to argue that such costs are lawful under *Sutherland*. Significantly, however, such draconian/unconscionable costs and venue provisions

confirm that Plaintiff had no bargaining power at the time of the adhesion arbitration agreement.

> **6. THE DISTRICT COURT LACKED JURISDICTION TO COMPEL ARBITRATION UNDER THE FAA – SECTION 1 OF THE FAA SPECIFICALLY EXCLUDES DELIVERY/TRANSPORTATION WORKERS LIKE PLAINTIFF**

Plaintiff argued in her opening brief that the district court lacked power or jurisdiction to compel arbitration under the FAA which excludes transportation workers like (Pl. Br. 40-43). In response, Defendant claims this argument was not raised below and has been waived. However, this argument can be viewed as a jurisdictional argument and such jurisdictional arguments are never waived and can be raised at any time. *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012). Moreover, Defendant has the burden of showing that the FAA applies. In any event, the requirements for this Court to consider this argument are satisfied. *Sniado v. Bank Austria AG*, 378 F.3d 210, 212–13 (2d Cir. 2004) ("We have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding."). We also note that the case upon which this argument is based in the context here, *Diaz v. Michigan Logistics Inc.*, -F.Supp.3d-, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016). (ECF No. 20 – March 4, 2016), was decided after the district court compelled arbitration in this case.

Second, Defendant argues that, "the court [in Diaz v. Michigan Logistics] explicitly declined to decide whether the exemption to the FAA applied …" (Def. Br. 29). Once again, Defendant ignores the reasoning in *Diaz* – the Court in *Diaz* could not decide the FAA exemption issue because there were issues of fact that could not be resolved on a motion to compel arbitration. Here, to the extent the facts are undisputed, they require a conclusion that the exclusion applies. At minimum, however, there are issues of fact that would preclude a conclusion that the FAA applies to this action. In this regard, Defendant does not dispute that Plaintiff was a transportation worker. Defendant also does not dispute and the parties agree in their "agreement" that Plaintiff's 'services involve interstate commerce.' Nonetheless, Defendant argues that the exclusion requires that Plaintiff be "engaged" in interstate commerce and that "involve" is broader than and not necessarily the same as "engaged." Even assuming this to be so, Defendant does not dispute the obvious logic that the level of involvement may be such to qualify as "engaged" – this would usually be a classic fact question for a jury but for Defendant's admissions. In its motion to compel in the district court, Defendant stated in relevant part as follows (EDNY ECF No.13, pg. 10 ¶ 2):

> Ms. Bynum's services as a Personal Shopper, performed under her Independent Contractor Agreement with Instacart, are activities "affecting" interstate commerce under the FAA. *First,* Instacart's communications and logistics platform extends nationwide into New York, California, Oregon, Washington, Colorado, Illinois, Texas, Pennsylvania, Washington D.C., Connecticut, Indiana, Florida, Minnesota, and Massachusetts. Wake Decl. ¶ ¶ 5, 7. And Personal

> Shoppers-including Ms. Bynum-use the Instacart platform to connect
> with shoppers who seek grocery delivery services. *Id.* ifif 3, 6, 7;
> *Nicholson v. Labor Ready, Inc.,* No. C 97-0518 FMS, 1997 WL 294393,
> at *3 (N.D. Cal. May 28, 1997) (defendant's business presence and
> activity across multiple states supports FAA application).

Defendant's above description of Plaintiff's work easily constitutes engagement in interstate commerce. 29 C.F.R. § 779.103 ("workers who regularly use the mails, telephone or telegraph for interstate communication" are engaged in interstate commerce.). Plaintiff also alleged in her complaint that she was engaged in interstate commerce. (A13, ¶ 47).

Even we were overly generous to Defendant, at minimum, there are issues of material fact which would preclude any conclusion that the FAA applies in this case: whether Plaintiff's undisputed involvement in interstate commerce rose to the level of engagement in interstate commerce. The Court in *Diaz* took this approach – holding that it could not conclude that the FAA applies because of material issues of fact that could not be resolved on a motion to compel arbitration.

Very significantly, Defendant does not seem to dispute Plaintiff's argument that arbitration cannot be compelled in this case under NY law and that New York does not have any policy favoring the arbitration of federal claims in federal court. (Pl. Br. 40-43).

### 7. THE PARTIES DID NOT AGREE TO ARBITRATE IN THE FIRST PLACE

As set forth above, Plaintiff argues that even if she signed an arbitration agreement to waive her FLSA right to a judicial forum and/or her FLSA wages, such an agreement is not enforceable under *Gangi*, *Brooklyn Savings* and *Cheeks*, because of the inherent inequality of bargaining power between employers and employees. Plaintiff also argued that there was no agreement or waiver in the first place because Defendant never signed the agreement. Defendant first argues that Plaintiff never raised this argument below. Defendant is wrong – Plaintiff not only raised questions about the contract formation as a whole – which required additional discovery, she also specifically noted the absence of Defendant's signature and argued that the purported agreement was created by 'the meeting of the minds of Plaintiff and *a computer*.' (EDNY ECF No. 29, pg 9). Second, Defendant cited to *Genesco*, for the proposition that an arbitration agreement need not be signed. However, central to that ruling was the finding that, Genesco was an experienced textile concern with economic power equal to that of Kakiuchi–Japan." *Genesco*, 815 F.2d at 846. Here, there is great and inherent inequality of bargaining power and a resulting agreement with draconian costs, venue and independent contractor provisions – the parties also had no history of dealing with each other or with arbitration prior to this agreement here. Moreover, if this Court requires a specific, clear and unmistakable waiver of the right to a judicial form for FLSA claims, the arbitration agreement here would easily

fail.

We note that in *Meyer v. Kalanick*, 199 F. Supp. 3d 752 (S.D.N.Y. 2016), Judge Rakoff found no meeting of the minds to arbitrate where a similar internet/computer process was involved. *Meyer* is not on appeal before this Court (2d Cir. Case No. 16-2750), and was argued on March 24, 2017, before Judges Chin, Carney, and Raggi.

### 8.  THIS COURT SHOULD STRIKE AND NOT CONSIDER THE NUMEROUS ARGUMENTS MADE ONLY IN FOOTNOTES BY DEFENDANT

For whatever reason, Defendant has made extensive use of footnotes to make arguments or to respond to Plaintiff's arguments – usually arguments it has greater difficult responding to. In *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 301 (2d Cir. 2006), this Court stated in relevant part as follows:

> Dow Jones's complaint also contains claims of tortious interference with contract and unjust enrichment. Dow Jones addresses these claims only in a cursory footnote in its initial appellate brief. We therefore deem them waived. See Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir.2001) ("A contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote."); United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

Defendant's use of footnotes of make arguments is not isolated or minor. As such, Defendant's *numerous* arguments contained only in footnotes should be stricken and not considered by this Court.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Honorable

Court: 1) vacate the district court's orders (2/12/2016 and 9/19/2016), and judgment

(9/19/2016); 2) allow Plaintiff to pursue and litigate her case and claims in the district

court where they were filed, instead of in arbitration; and 3) grant Plaintiff such other,

further and different relief in Plaintiff's favor as this Court deems just and proper.

Dated: Queens Village, New York
      April 24, 2017

                    Respectfully submitted,

                    Abdul Hassan Law Group, PLLC

                    __ /s/ Abdul Hassan_____
                    By: Abdul K. Hassan, Esq. (AH6510)
                    *Counsel for Plaintiff-Appellant Melody Bynum*
                    215-28 Hillside Avenue
                    Queens Village, NY 11427
                    Tel: 718-740-1000
                    Fax: 718-740-2000
                    Email: abdul@abdulhassan.com

## CERTIFICATION PURSUANT TO
### Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 6,790 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: April 24, 2017

_____/s/  Abdul Hassan_____
Abdul K. Hassan, Esq.

*db*